In the Matter of "P", Petitioner, against DEPARTMENT OF HEALTH OF THE CITY OF NEW YORK, Respondent.*

Supreme Court, Special Term, Bronx County, August 14, 1951.

*Sidney M. Offer* for petitioner.

*Nathan Rogers,* special guardian for incompetent.

*John P. McGrath, Corporation Counsel (E. Allen Jacobs* of counsel), for respondent.

MATTHEW M. LEVY, J. This is an application by one P to direct the department of health of the city of New York to issue a new or amended birth certificate so as to state that the surname

---

* Names used herein are fictitious for the purposes of publication.

of a certain infant is P instead of H. The petitioner (whom we have called P) claims to be the father of the child. The mother is mentally disturbed and has been a patient at a State hospital for a number of years. The Justice of the court who granted the order to show cause on the application of the petitioner appointed a special guardian to represent the interests of the incompetent mother.

The child was born on September 26, 1945. The petitioner alleges that he and the mother lived together as man and wife; that she was and is known as Mrs. P; that the child is P's and is known in their neighborhood as A. B. P.; and that, since the mother's illness, the child has been reared and taken care of by the petitioner, whose own mother and family have taken in the child as their own.

It appears (but not from the petition) that the mother and one H were married on August 5, 1943. The birth certificate of the infant in question, issued September 26, 1945, specified that the father's name was H, the husband, whose occupation was stated to be that of being in the United States army. It appears that at or about the time of the marriage, the husband was or became a member of the armed forces of the United States in World War II and that in the course of his military duties he was sent abroad. In October, 1945, after the birth of the child, and while the husband was in Germany, the husband set machinery in motion for the institution of a divorce proceeding against the mother, in the State of Pennsylvania, upon the ground of cruel and barbarous treatment.

The petitioner alleges that the child will shortly reach the age of six years and is soon to be registered in school and that it would be a humiliation to the child, the petitioner and the latter's family, were the youngster to bear a surname other than that of P, the child's actual father, and by which name the child has been continuously known.

There is no doubt, from the papers before me, that the petitioner is acting in good faith, and I think that he is to be commended for the frank recognition of his responsibilities. However, while I am sympathetic to the petitioner's plea, I can not grant it on the present state of the record — and that is so even though the special guardian recommends favorable consideration of the petition. There are, as will be seen, other interests involved who have not been heard.

The corporation counsel of the city of New York, on behalf of the department of health, opposes the motion on the ground that

the husband of the mother of the infant is a necessary party to this proceeding, and that failure of the petitioner to name the husband as a party and to serve notice of this application upon him renders the proceeding defective and requires the denial of the motion. Harsh as this view may be in the light of the petitioner's love and devotion for the child, and the husband's apparent abandonment, neglect and disinterest, the contention of the corporation counsel must be sustained. This is not a case where it is sought to correct a mechanical or administrative error in a birth certificate — the application here goes to the very essence of the birth record and of vital statistics, that is, the parentage of the child.

The petitioner, seeking to overcome the objection of the department of health, contends that (1) as the husband lives in Pennsylvania, service upon him was not feasible, and, moreover, would be legally ineffectual, and (2) as it is obvious that the petitioner and not the husband is the father of the child, notice to the husband was not necessary.

The fact that the husband is a nonresident would not render him immune from service in a proceeding such as this. The child was born and lives in this State. The mother lives in this State. The proceeding involves the records of a municipal department of the city of New York. The *res* is here; the status is here; the official duty is here. The jurisdiction of this court is obviously available in a proceeding in rem such as this; and, while the nonresidence of the husband might make it more difficult to serve him, it does not deprive this court of jurisdiction in the premises to grant the relief prayed for under proper circumstances and with appropriate notice to all necessary and interested parties. Nowhere in his moving papers did the petitioner disclose to the Justice who, ex parte, signed the order to show cause as the first step in this proceeding, that the mother had in fact been married, and that the child was born during the marriage. If these facts had been presented, the court in granting the show cause order undoubtedly would have specified the appropriate manner of notification to the nonresident husband.

The law seems to be that, in a proceeding under article 6 of the Civil Rights Law, to change the name of an infant under sixteen years of age, the consent of *both* parents is necessary. (*Matter of Weiss* [*Blauvelt*], 200 Misc. 241; *Schoenberg* v. *Schoenberg*, 57 N. Y. S. 2d 283, mod. 269 App. Div. 864, 1048, affd. 296 N. Y. 583.) While the present case is not such a proceeding under that statute, the effect is the same, and the cases cited

indicate at least that the father's interest can not be ignored, and perhaps that his consent is a jurisdictional prerequisite. Of course, this assumes that the husband is the parent; and the petitioner has proceeded upon the allegation that he, not the husband, is the father. Consequently, while this is not an action for a declaratory judgment, under section 473 of the Civil Practice Act, to determine the status of the child, such as legitimacy, parentage and the like (*Somberg* v. *Somberg*, 263 N. Y. 1, 4; *Morecroft* v. *Taylor*, 225 App. Div. 562), the determination which I am asked to make must be grounded upon a finding that the child is illegitimate. In fact, under section 254 of the Judiciary Law, " When a court of competent jurisdiction shall make a determination as to the parentage of any person, the clerk of the court shall forthwith transmit to the state commissioner of health on a form prescribed by him a written notification of such entry together with such other facts as may assist in identifying the birth record of the person whose parentage was in issue." I proceed, therefore, in the consideration of this matter, on the basis that the child's parentage is the very issue I must determine, however obliquely the issue is presented.

The presumption of legitimacy " is one of the strongest and most persuasive known to the law ", and the presumption will not fail " unless common sense and reason are outraged by a holding that it abides " (*Matter of Findlay*, 253 N. Y. 1, 7, 8; *Commissioner of Public Welfare* v. *Koehler*, 284 N. Y. 260). The burden of establishing illegitimacy is cast upon those claiming it (*Matter of Byrnes*, 160 Misc. 474). The rights of a father are protected and " In the absence of the written consent of the father, there is no authority under existing law for a new birth certificate to be issued stating the surname of the father to be that of the child." (*Matter of Izzo* v. *Rice*, 95 N. Y. S. 2d 113; *Matter of Cardona* v. *Department of Health of City of N. Y.*, 197 Misc. 509.)

Nonaccess of the husband is by no means conclusively proved in the present record. The child was born in September, 1945. Government records showing the dates of the husband's military service abroad have not been produced. In one place in his report, the special guardian states that the petitioner told him that the husband " went overseas in 1943 "; elsewhere the report indicates that the incompetent's sister told the special guardian that the husband " went overseas about 1944 ". If the latter date is approximately correct, intercourse with the husband was

quite physically possible, and consequent pregnancy and gestation would not preclude H's child being born in September, 1945. Moreover, there is no proof before me that the husband did not live with his wife in or around December, 1944 — it is militarily possible that he might have been furloughed home from across the seas for a short stay and at a time crucial to the resolution of the issue of nonaccess. In his divorce petition, which was verified in Germany on October 1, 1945, the husband stated that he was married on August 5, 1943, and that he '' lived and cohabited with '' the mother of the child '' from that time until .................... [blank — no date being specified] '', and that his life with the mother was rendered burdensome and intolerable, '' thereby causing him to withdraw from his wife *and family.*'' (Italics supplied.) It may be, as claimed by the petitioner, that in many respects the mother recognized the petitioner as her husband and as the father of her child, but she seemed to have informed the authorities, as appears from the birth certificate, that H, the husband, was the father, not P.

There may be evidence obtainable which, upon presentation to the court in proper form, would establish that the husband in fact did not have access to the mother and that he could not have sired the infant. But these facts are not now before the court, nor has any notice been given to the husband so that he might be aware of the proceedings and determine for himself whether he is desirous of contesting, consenting, or remaining silent.

Moreover, as I suggested on the argument, the impact of my decision on the infant may be quite serious — and in my view, the infant should be directly represented in a proceeding such as this, where the granting of the petitioner's application would mean that (however undesired or unjust so far as the infant is concerned) he will forever be subject to the psychological hazard if not the public handicap of illegitimacy. I am not unmindful that in history's pages there is recorded the fact that some children born out of wedlock — whether as a result of momentary passion, incidental indiscretion or lasting love — have in later life made their marks as great men and women. I know, too, that more and more have statutory enactments properly sought to break down the unfair barriers created by earlier concepts in these matters. Nor am I unaware of certain current thinking that legitimacy or bastardy is a natal status of no moment in these days of social development and advanced understanding. For myself, however, I am not sure

that centuries of tradition and morality and law can juridically be so easily deprecated. I am not warranted in ignoring the child's right to be represented or heard in a proceeding which may have a lasting bearing on the determination of his parentage. Be that as it may, even from the point of view of property and of practicality, an infant of the age of six, as a ward of the court, is entitled to direct professional representation. Suppose the husband has a substantial estate — should there even be any tangential determination by this court that the husband is not the father of the child — and thus render it more difficult, if not impossible, for the infant in later life to obtain a possible just inheritance? In *Matter of Melis* v. *Department of Health* (260 App. Div. 772, 775) the court indicated that in a suit for a declaratory judgment, '' the infant, whose rights are paramount, should be made a party in the manner provided by law (Civ. Prac. Act, § 225) and a guardian *ad litem* appointed to protect its interests. [Citing cases.] '' I think that without question the same procedure should be followed here.

The present motion is, therefore, denied, without prejudice, however, to a renewal in a proceeding in which notice is to be served on the husband as may be directed by the court, and also upon a special guardian to be appointed by the court to protect the infant's interests.

The papers in this matter, including the exhibits, are directed to be sealed, subject to the order of the court. Settle order.