'' JOHN JONES '', Plaintiff, *v.* '' MARY JONES '', Defendant.*

Supreme Court, Special Term, Bronx County, August 6, 1955.

* The title of this action, as here reported, utilizes fictitious names to describe the parties.

722

*Sydney J. Schwartz* for plaintiff.

*Stella Sternberg,* special guardian.

MATTHEW M. LEVY, J. The instant proceeding presents an interesting situation involving the applicability and effect of the physician-patient privilege.

The action is to annul a marriage upon the ground of fraud. The charge is that, at the time of the marriage, the defendant was pregnant by another than the plaintiff, which fact was concealed by the defendant from the plaintiff. The plaintiff asserts that the parties met in France while he was in the naval service of the United States; that when he returned to this country, courtship continued by mail; that by arrangement the defendant arrived in New York on August 15, 1953, and the marriage was celebrated here on September 12, 1953; that ten days later, upon discovery of the pregnancy by the plaintiff, separation ensued; that the defendant returned to France on or about September 26, 1953; and that she gave birth to a child (not the plaintiff's) at Le Havre on April 17, 1954. Mother and child have remained abroad. This suit followed.

The defendant wife defaulted in defense of the action. As is usual, a special guardian was appointed by the court to protect the interests of the infant, as to legitimacy and otherwise. Upon the plaintiff's application, and by order of the court, blood-grouping tests were directed to be had of mother and child at Le Havre, and of the plaintiff father in New York (Civ. Prac. Act, § 306-a). The court, also on the plaintiff's motion, directed that a commission be issued to the American Consul at Le Havre to take the depositions on written interrogatories of the attending obstetrician and of the physician performing the blood-grouping tests abroad. It was thought likely that the witness as to both phases would be one and the same person. In any event, the proposed inquiries are in two sections — one with respect to the blood-grouping tests, the other with respect to the

delivery of the child. The interrogatories are now being settled (Rules Civ. Prac., rule 126) and that is how the matter comes before me. No objection is raised by the special guardian as to the first group of interrogatories (except as to the " eighth " inquiry) and the primary issue raised is as to the second group (except as to certain formal matters).

By way of the second set of interrogatories the plaintiff seeks to make inquiry of the doctor as to whether he treated the defendant for prenatal care; his conversations with her, and hers with him, as to her pregnancy and the period thereof; as to whether during the prenatal examination he fixed a presumed delivery date at April 25, 1954; as to the factors considered by him in thus fixing the anticipated date of delivery; whether a child was born to the defendant on April 17, 1954; its weight and general physical condition; whether the child at birth had any indications of prematurity; whether in the doctor's opinion the child was a full-term delivery; and as to whether the witness could relate any other facts or circumstances indicating to him as a physician the date of the conception of the child. The theory of plaintiff's submission is that the child, when born, was of normal weight, in good health, and gave no indication of pathological prematurity; that the anticipated date of birth of April 25, 1954, was only eight days later than the actual date of birth; and that it is apparent that a full-term child with a presumed date of delivery of April 25, 1954, would have been conceived during July of 1953, prior to the wife's departure from France to the United States; and that, therefore, the defendant was pregnant by another than the plaintiff prior to the marriage of the parties. It is asserted by the plaintiff's counsel that, before the defendant returned to France, she signed a written admission that the father of the child with which she was then *enceinte* was not the plaintiff, and that the answers sought to be elicited from the obstetrician by way of deposition fit in with the facts as they appear to the plaintiff, as they have been ascertained from the obstetrician, and as admitted by the defendant, and that — since a confession will not, under the law of New York, suffice to warrant an annulment — the physician's testimony is desired so that " other satisfactory evidence of the facts " might be presented to the court in support of the complaint (Civ. Prac. Act, § 1143, subd. 2).

As a general rule, pertinency of the inquiry sought to be made is the only test to be invoked upon the settlement of interrogatories and cross interrogatories (*Zeggio* v. *Robinson,* 155 App. Div. 893; *Spurr & Sons* v. *Empire State Sur. Co.,* 122 App.

Div. 449; *Irving* v. *Royal Exch. Assur. Co.*, 122 App. Div. 56). Assuming pertinency, an objection as to the form only of a proposed question is ordinarily to be taken then, and any objection as to competency — of the witness or of the question or answer — is reserved for ruling upon the trial (Rules Civ. Prac., rules 126, 129; Civ. Prac. Act, § 305). This is so because the trial court normally passes upon the competency of a witness or the admissibility of evidence as the case may develop, and the rights of the parties are duly protected at the trial, either by objections or by motions to strike (see *Irving* v. *Royal Exch. Assur. Co.*, 122 App. Div. 56, and *Wanamaker* v. *Megraw*, 168 N. Y. 125). However, an exception to the pertinency rule arises where privilege is claimed; otherwise, the forbidden disclosure would result, even though the answers to the interrogatories were ultimately excluded at the trial. The Civil Practice Act (§ 354) provides that the testimonial privilege arising out of the confidential relationship of physician and patient applies " to *any examination* of a person as a witness " unless there be a waiver (italics mine). Thus it is that proposed interrogatories calling for the disclosure of confidential information are disallowed (*Rodner* v. *Buchman*, 246 App. Div. 777; *Lorde* v. *Guardian Life Ins. Co. of America*, 252 App. Div. 646), in the absence of due waiver of the privilege (*Murray* v. *Physical Culture Hotel*, 258 App. Div. 334).

Has there been such waiver here? I think not. The statute (Civ. Prac. Act, § 354) requires that, to overcome the privilege, " the provisions thereof * * * [be] *expressly* waived upon the trial or examination by the * * * patient " (italics mine); and, while such waiver may, in certain circumstances, be found to have been expressed by virtue of the implication necessarily arising from procedures taken by the patient in the litigation, it is not to be readily spelled out as an easy method of overcoming the established privilege (cf. *Vilardi* v. *Vilardi*, 200 Misc. 1043). It is not claimed here that the wife has in so many words consented to waive the privilege. Her waiver, if any there be, must be implied from her default in the action and from the claimed admission of her premarital pregnancy. That, in my view, is not enough. " The waivers herein provided for must be made in open court, on the trial of the action or proceeding, and a paper executed by a party prior to the trial providing for such waiver shall [as distinguished from a stipulation made by the attorneys for the respective parties] be insufficient as such a waiver " (Civ. Prac. Act, § 354).

Moreover, the privilege — claimable by the defendant as a patient — is not, in every sense, strictly personal to her alone. While the mother in default interposes neither consent nor objection, the child's objection (through the special guardian) is, I hold, sufficient to enforce the privilege. And, although I have found nothing squarely in point, there are, I think, several lines of sound argument in support of this view.

It is recognized law that wherever it appears that disclosure would tend to disgrace the memory of a deceased patient, the testimony of the physician will be excluded (*Mulligan* v. *Sinski*, 156 App. Div. 35, affd. 214 N. Y. 678). The deceased cannot be personally affected by the disclosure; the dead can neither claim nor waive the privilege. Nor can the child in the case at bar personally object. And while it is not the memory of a deceased that is now pleading for protection, it is the status of a living child, delivered by means of the very physician-patient relationship and confidence which it is sought to break down. It seems to me that the infant, hopefully expected to live a happy and secure adult life, is entitled as much to the protection of the privilege during that life as one who has lived his years and himself can no longer suffer or be hurt by the disclosure.

The " question of privilege can be raised by a party although the patient is not a party for the reason that it is in the public interest in the absence of waiver by the patient that the confidential nature of the relationship be protected even though the patient is not before the court. (*Bacon* v. *Frisbie*, 80 N. Y. 394, 399, 400.) " (*Murray* v. *Physical Culture Hotel*, 258 App. Div. 334, 337, *supra*.) Be that as it may, the infant, by order of the court, has in effect become a party to the annulment action, independent of the plaintiff or the defendant. It is physiologically possible — as appears clearly from the dates involved — that the infant is in fact the child of the plaintiff. The child's legitimacy is squarely put in issue in this action. It is for that reason — even though the mother may have, by default and confession, admitted the premarital conception — that the court appointed a special guardian to protect the interest of the child allegedly born of that conception.

Moreover, the child, on its own, in my judgment — at least from the point of view of the privilege — became a patient of the mother's obstetrician, as well as was the mother herself. In so holding, I can think of the infant as a third-party beneficiary of the mother-doctor contract, or perhaps a principal for whom the mother acted as agent. I do not, however, rely upon either of these fictional arguments; but rather upon the fact that the

obstetrician did in fact professionally treat the child as well
as the mother. That the physician could not of course be directly
engaged by the viable foetus, even when later born, is obvious
(cf. as to torts, *Woods* v. *Lancet,* 303 N. Y. 349); but it is not
necessary, in order to bring the proposed testimony within the
privilege, that the doctor should have been employed by the
patient. The privilege attaches equally whether the physician
was called in by the patient or by another; and the fact that
the patient was unconscious or unaware of the physician's
presence is immaterial. If the doctor attends for the purpose
of giving professional aid for the benefit of the patient, the
privilege exists (*Renihan* v. *Dennin,* 103 N. Y. 573). An apt
illustration may be found in *Meyer* v. *Supreme Lodge, Knights
of Pythias* (178 N. Y. 63, affd. 198 U. S. 508). There, a bellboy
in a hotel summoned a physician to attend a guest who, intend-
ing to commit suicide, had eaten a substance described as
'' Rough on Rats '' (p. 66); the physician was held incompetent
to testify to any information gained while treating the patient,
although the latter, with curses, ordered the doctor from the
room.

One further matter requires attention. The plaintiff urges
that as the relationship of doctor and patient was in this case of
French origin and existence, and that since the deposition is
to be taken in France, the rules of evidence governing the
taking of the testimony of the French physician there would
be those applicable in France — and that the burden is on the
party objecting to the interrogatories to establish that the
privilege invoked to avoid the deposition existed as a matter
of law in the foreign jurisdiction. The contention is overruled.
And it is immaterial that the French physician may be willing
to testify, because the privilege is that of the patient, and not
of the physician, and therefore it is for the patient to decide
whether to claim or waive it (Civ. Prac. Act, § 354). I hold
that competency and relevancy and admissibility are matters
of adjective law, governed by the procedure and rules estab-
lished where the case is tried. The cause is pending in this
court; the deposition will be taken, if allowed, by an order of
this court; the answers to the interrogatories will be used as
evidence in this court. Whether or not a witness is competent
to testify or an inquiry is relevant or a response is admissible
is a matter for the law of the forum to determine, not the law
of the place where the transaction was entered into or where
the deposition is to be taken. And while generally the party
claiming the privilege has the burden of establishing the neces-

sary facts to bring the case within the statute (*Griffiths* v. *Metropolitan St. Ry. Co.*, 171 N. Y. 106, 111; *Kelly* v. *Dykes*, 174 App. Div. 786), that principle does not apply. A party to an action pending here, who asked this court for an order to take a deposition abroad to be used here, cannot impose upon the adverse party the burden of supporting his objection — valid upon the basis of the New York law of evidence — by requiring proof of the foreign law and then contend that, if the objecting party fails to present the foreign law (whatever it may be), the objection must be overruled. What I had occasion to say the other day in *Mangrelli* v. *Italian Line* (208 Misc. 685) is quite apposite here, and I shall not repeat it.

It may be that the blood-grouping tests authorized by the court will result in the " satisfactory evidence of the facts " which the law requires (Civ. Prac. Act, § 1143, subd. 2). But whether that proves to be so or not, I cannot permit my sympathy for the plaintiff in his present plight to lead me to ignore two principles, basic in our law and applicable here: Firstly, the " long-standing public policy to encourage uninhibited communication between persons standing in a relation of confidence and trust " (*People* v. *Shapiro*, 308 N. Y. 453, 458), such as that of physician and patient, is not casually to be ignored or overruled (*Edington* v. *Mutual Life Ins. Co.*, 67 N. Y. 185, 194). And secondly, illegitimacy, even in this enlightened age, is not a status lightly to be decreed (*Matter of " P "* v. *Department of Health*, 200 Misc. 1090).

The interrogatories in the first group (except as to No. 8) are allowed. The interrogatories in the second group (except as to Nos. 1, 2, 3, 4 and 8) are disallowed. Settle order accordingly.