588 N.E.2d 1278 (1992)
In re the PATERNITY OF S.R.I.
W.R., Appellant-Petitioner,
v.
H.I. and V.W.I., Appellees-Respondents.
No. 02A03-9110-CV-328.
Court of Appeals of Indiana, Third District.
March 16, 1992.
Rehearing Denied April 27, 1992.
*1279 Arthur M. Weingartner, Cornelius & Weingartner, Fort Wayne, for appellant-petitioner.
HOFFMAN, Judge.
Appellant-petitioner W.R. appeals the denial of his petition to establish the paternity of S.R.I.
The facts relevant to the appeal disclose that appellees-respondents H.I. and V.W.I. were married in December of 1965. S.R.I. was born on November 28, 1984, and the marriage of H.I. and V.W.I. was dissolved on April 3, 1986. The dissolution decree found S.R.I. to be a child of the marriage and resolved matters of custody, support, and visitation relating to S.R.I.
W.R. filed a petition to establish the paternity of S.R.I. on October 9, 1990. On March 15, 1991, the trial court conducted a hearing on the petition. That same day, the trial court denied the petition, ruling that the dissolution decree was res judicata as to the issue of paternity. W.R. filed a motion to correct error on April 15, 1991, which the court denied on July 1, 1991. This appeal ensued.
W.R. claims the trial court erred in its ruling that the dissolution decree was res judicata as to the issue of paternity.[1]Res judicata is an affirmative defense under Ind. Trial Rule 8(C). In order to properly preserve an affirmative defense, the party with the burden of proving the defense must have either set it forth in a responsive pleading or litigated it by consent of the parties. Lafary v. Lafary (1985), Ind. App., 476 N.E.2d 155, 159. As W.R. notes, not only did H.I. and V.W.I. fail to raise or litigate the affirmative defense of res judicata, they expressly waived the defense at the hearing on the paternity petition. Consequently, the basis for the trial court's ruling was erroneous; however, this Court is free to affirm the trial court on any legal theory the evidence supports. Stafford v. Barnard Lumber Co., Inc. (1988), Ind., 531 N.E.2d 202, 204.
The presumption that a child born during marriage is legitimate is one of the strongest known to the law and may be rebutted only by direct, clear, and convincing evidence. H.W.K. v. M.A.G. (1981), Ind. App., 426 N.E.2d 129, 131. W.R. argues that the blood test results attached to his petition are clear and convincing evidence that he rather than V.W.I. is the biological father of S.R.I. However, even assuming this were true, public policy dictates that we affirm the trial court for the reasons discussed below.
Stability in legally-established relationships between parents and children is of paramount importance to the welfare of the children. Where, as here, a dissolution decree finds the children to be children of the marriage and resolves custody, support, and visitation matters, allowing a third party to disrupt the arrangement by filing a paternity action several years later would destroy whatever stability there was in the legally-established relationship. It *1280 would also open the door to other paternity actions in the future and do away with any semblance of finality regarding these matters. This Court cannot allow such a disruptive and destructive chain of events to occur; therefore, we must affirm the trial court's denial of W.R.'s paternity petition.[2]
W.R. did not cite Fairrow v. Fairrow (1990), Ind., 559 N.E.2d 597, in his brief; however, this Court finds a discussion of the Fairrow case necessary to a complete opinion. In Fairrow, our Supreme Court held that a husband was entitled to relief from child support payments after 11 years due to newly-discovered medical evidence that he could not be the child's father. Although acknowledging the importance of stability in legally-established relationships between parents and children, the Fairrow court found that justice did not favor a support order against a husband who was not the child's father. However, in granting relief, the court emphasized that the gene testing results which gave rise to the prima facie case for relief were highly unusual and obtained independently of court action.
In contrast to Fairrow, the instant case did not involve a support issue, W.R. was never married to S.R.I.'s mother, and the only medical evidence was various blood test results attached to the paternity petition which merely excluded V.W.I. as the biological father of S.R.I. Moreover, according to the paternity petition, W.R. has supported S.R.I. since the time of the dissolution of the marriage of H.I. and V.W.I.; therefore, he had no justifiable excuse for the over 4-year delay in challenging paternity.[3] Again, the judgment of the trial court is affirmed.
Affirmed.
BUCHANAN, J., concurs.
STATON, J., dissents with opinion.
STATON, Judge, dissenting.
I dissent. The wrong public policy has been applied by the Majority. Their public policy rationale of "stability in legally-established relationships" and "avoidance of disruption years later" (Maj. at 1279) is embodied in the statute of limitations provisions of Ind. Code 31-6-6.1-6.
The right public policy is found in Ind. Code 31-6-6.1. The 1979 enactment of the juvenile code permitted a man alleging himself to be a child's father to bring an action to establish paternity, without reference to his or the mother's marital status. Ind. Code 31-6-6.1-2(a)(2).
Too, all parties stipulated that W.R. is S.R.I.'s biological father.[1] W.R. is willing and able to provide emotional and financial support for S.R.I. For years, W.R. has faithfully paid support for S.R.I. in accordance with an agreement between him and H.I., the mother of S.R.I. Record, p. 15. Additionally, it is clear from the record that W.R. has enjoyed a "continuing relationship" with S.R.I. Record, p. 22. As the Majority concludes and I agree, the parties waived a potential res judicata defense.[2] *1281 Moreover, the statute of limitations was tolled by W.R.'s voluntary provision of child support to S.R.I. during the five years preceding the filing of the petition.
Even prior to the enactment of I.C. 31-6-6.1, this court held that the action of an alleged father seeking to establish his paternity could not be summarily dismissed on public policy grounds. A.B. v. C.D., (1971), 150 Ind. App. 535, 277 N.E.2d 599, trans. denied. A.B. sought to be declared the father of a child born during his wife's first marriage (to C.D.). The dissolution decree dissolving the first marriage provided for the custody of the child as a "child of the marriage." The trial court entered summary judgment for the first husband, finding that public policy would not permit the action of the second husband. This court reversed the grant of summary judgment:
[I]n the few instances coming to our attention in which an adulterer has sought a declaration of his illegitimate paternity of a child presumptively the legitimate child of another man, there has been no mention of the possibility of any public policy which would bar him.
Id. at 556; 277 N.E.2d at 614.
Interestingly, both before and after the enactment of I.C. 31-6-6.1, this court embraced no "public policy" prohibition of a married mother's action to establish the paternity of her child in a man other than her husband, although the presumably legitimate child was therein declared illegitimate. H.W.K. v. M.A.G. (1982), Ind. App., 426 N.E.2d 129; Crawford v. Beatrice (1952), 122 Ind. App. 98, 102 N.E.2d 915.
The majority discusses Fairrow v. Fairrow (1990), Ind., 559 N.E.2d 597 but distinguishes the instant case in that it: "did not involve a support issue, W.R. was never married to S.R.I.'s mother, and the only medical evidence was various blood test results attached to the paternity petition which merely excluded V.W.I. as the biological father of S.R.I." [Slip op. at 4]
The instant case does involve a support issue, in that W.R. is willing and able to provide both emotional and financial support to S.R.I. He also seeks to provide S.R.I. the security of a legally-recognized relationship with his undisputed biological father.
Our supreme court stated in Fairrow, supra: "there is a substantial public policy, namely justice, which disfavors a support order against a husband who is not the child's father." Id. at 600. Conversely, there is a substantial public policy which favors a support order against a man who is a child's father. A hollow adherence to a presumption of legitimacy in this matter would both continue an unjust support order against V.W.I. (excluded by paternity testing as S.R.I.'s biological father) and deprive S.R.I. of the security, companionship and financial support willingly offered by his biological father. I would reverse the judgment of the trial court.
NOTES
[1] This Court would note that neither H.I. nor V.W.I. filed an appellate brief. When an appellee fails to submit a brief, an appellant may prevail by making a prima facie showing of reversible error. Watkins v. Alvey (1990), Ind. App., 549 N.E.2d 74, 75-76.
[2] This Court finds it disturbing that a guardian ad litem was not appointed in this case for the child, the most interested party in the entire proceedings. Moreover, the sparseness of the record, the lack of an appellees' brief, and the general consensus among all parties as to W.R. being the biological father indicates a high probability of collusion.
[3] According to IND. CODE § 31-6-6.1-6(a) (1988 Ed.), a man alleging to be a child's father must file a paternity action within 2 years after the child is born. Here, W.R. filed his petition almost 6 years after S.R.I.'s birth; however, as previously mentioned, W.R. stated in his petition that he has supported S.R.I. since the time of the dissolution of the marriage of H.I. and V.W.I. IND. CODE § 31-6-6.1-6(a)(2) provides an exception to the 2-year statute of limitations when the alleged father has voluntarily furnished support within 2 years of the paternity action; therefore, W.R.'s petition is not barred by the statute of limitations. See Farmer v. Minor (1986), Ind. App., 495 N.E.2d 553, 555-556.
[1] The blood test results attached to W.R.'s petition reflect that the probability of W.R.'s paternity of S.R.I. is 99.58%, as compared to an untested, unrelated man of the North American Caucasian population. Record, p. 6.
[2] A plea of res judicata would be unsuccessful, as the petitioner herein was not a party to the dissolution action. See also In Re Marriage of Moser (1984), Ind. App., 469 N.E.2d 762 (res judicata did not preclude action by alleged father who had divorced mother; the dissolution decree of the parties recited that no children were born of the marriage).