### In re the PATERNITY OF S.R.I.

**W.R., Appellant (Petitioner Below),**

v.

**H.I. and V.W.I., Appellees (Respondents Below).**

**No. 02S03–9211–CV–912.**

Supreme Court of Indiana.

Nov. 13, 1992.

Arthur M. Weingartner, Fort Wayne, for appellant.

No appearance for appellee.

SHEPARD, Chief Justice.

Appellant W.R. claims S.R.I. is his son. No one disputes his contention. He would like to establish paternity and assume the legal obligation of supporting S.R.I., a responsibility he has undertaken voluntarily for several years. The courts thus far have not allowed it.

The facts reveal that appellees H.I. and V.W.I. were married in 1965. H.I. bore a son, S.R.I., in November 1984. In 1986, H.I. and V.W.I. divorced. In 1990, W.R. filed a petition to establish the paternity of S.R.I. His petition stated that he had been living with H.I., acting *in loco parentis* to S.R.I., and that he wished to continue supporting the child. Attached to W.R.'s petition were an affidavit acknowledging paternity, and results of blood tests purporting to show that W.R. was indeed S.R.I.'s biological father.[1]

At an initial hearing on March 15, 1991, the trial court denied W.R.'s petition without commenting about the evidence contained in the affidavits, ruling instead that the question of S.I.'s paternity was *res judicata* because the dissolution decree for V.W.I. and H.I.'s 1986 divorce found S.R.I. to be a child of the marriage.[2] The trial court found *res judicata* despite the fact that H.I. and V.W.I. expressly waived the defense at the hearing on the paternity petition.[3] A divided Court of Appeals concluded that this finding of *res judicata* was error, but it affirmed the trial court on public policy grounds, citing the need for stability in the relationships between children and parents. *In Re Paternity of S.R.I.* (1992), Ind.App., 588 N.E.2d 1278. Said the majority:

1. According to the test results, the probability of W.R. being S.R.I.'s biological father was 99.58 per cent. The tests also ruled out the possibility that V.W.I. was S.R.I.'s biological father.

2. It is clear that the court hearing this proceeding concluded that the dissolution decree declared S.R.I. a "child of the marriage." The

dissolution order, however, is not included in the sparse record submitted for this appeal.

3. Indeed, no one has come forward to oppose W.R.'s petition. Appellees did not file briefs in the Court of Appeals or in this Court.

Stability in legally-established relationships between parents and children is of paramount importance to the welfare of the children. Where, as here, a dissolution decree finds the children to be children of the marriage and resolves custody, support, and visitation matters, allowing a third party to disrupt the arrangement by filing a paternity action several years later would destroy whatever stability there was in the legally-established relationship. It would also open the door to other paternity actions in the future and do away with any semblance of finality regarding these matters. This Court cannot allow such a disruptive and destructive chain of events to occur; therefore, we must affirm the trial court's denial of W.R.'s paternity petition.

*Id.* at 1279–80.

## I. Public Policy

▮ We agree with the Court of Appeals majority that stability and finality are significant objectives to be served when deciding the status of children of divorce. On the other hand, there is a substantial public policy in correctly identifying parents and their offspring. Proper identification of parents and child should prove to be in the best interests of the child for medical or psychological reasons. It also plays a role in the just determination of child support; we have already declared that public policy disfavors a support order against a man who is not the child's father. *Fairrow v. Fairrow* (1990), Ind., 559 N.E.2d 597. Conversely, as Judge Staton noted in his dissent, "there is a substantial public policy which favors a support order against a man who is a child's father." *In Re Paternity of S.R.I.*, 588 N.E.2d at 1281 (Staton, J., dissenting). This is essentially what W.R. seeks, to take responsibility for a child whom he apparently fathered. This responsibility includes financial support, of course, but both parent and child have an interest in the more personal aspects of the relationship—custody, visitation, supervision, and the like.

4. For an excellent discussion of the doctrine of *res judicata*, see Judge Ratliff's opinion in *In Re*

▮ Indiana Code Ann. § 31–6–6.1–2 (West Supp.1992) allows a man alleging that he is a child's biological father to file a paternity action. This provision makes no reference to the marital status of the mother. Thus a putative father may establish paternity without regard to the mother's marital status, so long as the petition is timely filed. *See* Ind.Code Ann. § 31–6–6.1–6 (West Supp.1992). Of course, the putative father must put forth evidence that is "direct, clear, and convincing" to rebut the presumption that a child born during marriage is legitimate. *Fairrow*, 559 N.E.2d at 600.

▮ Under these unusual circumstances, W.R. ought to have his day in court and an opportunity to present his evidence. Whether a cause of action like this one would be permitted while the mother's marriage is intact is not presented in this case, and we do not decide that question.

## II. Res Judicata

▮ As for the trial court's finding of *res judicata*, although we agree with the Court of Appeals that waiver disposes of the issue, we observe that the doctrine cannot control in a case such as this where the petitioner was not a party to the dissolution action. *See* 17 I.L.E. *Judgment* §§ 380, 417 (1959).[4] Furthermore, even if the dissolution decree found S.R.I. to be a child of the marriage of H.I. and V.W.I. (and we can only surmise from this record that if it so stated), it would be error to find *res judicata* as to paternity based on the order alone. As the Court of Appeals said in *A.B. v. C.D.* (1971), 150 Ind.App. 535, 560, 277 N.E.2d 599, 616:

> Such an order does not affect the child's status, especially when the child is not a party to the action. In fact, the want of any binding effect on the child's status seems to be the basic reason for the widespread practice of *not* appointing a guardian *ad litem* for him, or otherwise providing for his representation in divorce cases and paternity-support cases.

*Marriage of Moser* (1984), Ind.App., 469 N.E.2d 762, 765–66.

The finding that the child "was born as the issue of this marriage" amounts to no more than a finding that he was born to the wife during the marriage.... (footnote omitted.)

In other words, dissolution findings are binding on the *parties* to the dissolution. S.R.I. was not a party to the dissolution. Thus, in the face of W.R.'s colorable claim of paternity, the dissolution decree amounts to no more than a finding that S.R.I. was born to H.I. during the marriage. It is not a procedural bar to W.R.'s effort to establish paternity.

### III.   Guardian Ad Litem

■ Finally, the Court of Appeals majority in the instant case noted with justification that it found it "disturbing that a guardian *ad litem* was not appointed in this case for the child, the most interested party in the entire proceedings." *In Re Paternity of S.R.I.*, 588 N.E.2d at 1280 n. 2. We agree with the Court of Appeals that it would be appropriate in this unusual case. "Courts are charged with the duty of protecting the rights of infants in controversies over which they acquire jurisdiction, and guardians *ad litem* serve as their agents in discharge of this duty." *Gibbs v. Potter* (1906), 166 Ind. 471, 475, 77 N.E. 942, 943–44. *See also* Ind.Code Ann. § 34–2–3–1 (West 1983). On remand, the trial court should appoint a guardian *ad litem* for S.R.I. to ensure that his interests are properly represented at the paternity hearing.

We reverse the judgment of the trial court and remand for a hearing on the merits of W.R.'s petition.

DeBRULER, GIVAN, DICKSON and KRAHULIK, JJ., concur.