In the Matter of the PATERNITY OF H.J.F.

No. 62A05–9305–JV–160.

Court of Appeals of Indiana, Fifth District.

May 24, 1994.

Mark R. Ramsey, Tell City, for appellant.

John Wissner, Scales Wissner & Krantz, Boonville, for appellee.

SHARPNACK, Chief Judge.

D.F. appeals the trial court's decision in favor of T.B. in T.B.'s action to establish paternity of H.J.F. We vacate and remand to the trial court to set aside its previous order and judgment.

D.F. presents four issues for our review. We find *sua sponte*, however, that the court's judgment is void because H.J.F. was not joined as a party to the action. Therefore, we only address the one argument set forth by D.F. that demands resolution at this time, and that is whether the court erred in failing to appoint a guardian *ad litem* to protect the interests of H.J.F.

## Facts

In September, 1990, D.F., who was separated from her husband, S.F., began a sexual relationship with T.B. In November, 1990, D.F. and T.B. conceived a child. In April, 1991, D.F. reconciled with S.F., who expressed his wish to raise the child. On August 6, 1991, H.J.F. was born.

T.B. filed a paternity action on November 25, 1991. The court ordered a blood grouping test to determine paternity on June 3, 1992. D.F. failed to appear as ordered, but after a contempt hearing D.F. submitted to the blood test. The results of the testing revealed a 99.94% probability that T.B. had fathered H.J.F. On December 15, 1992, a trial was held on the issue of paternity. D.F. contested T.B.'s claim and objected to the admission of the blood test results. The court sustained the objection and continued the hearing to a later date to allow T.B. to perfect the admissibility of the blood tests. Prior to the continued trial date, D.F. admitted to T.B.'s paternity, and on January 12, 1993, a hearing was held on the issues of visitation and support. The court entered an order changing H.J.F.'s last name to that of T.B., granting D.F. custody of H.J.F. subject to visitation rights in T.B., and ordering T.B. to pay $52.00 per week child support retroactive to December 25, 1992. In addition, the court ordered D.F. to pay T.B.'s legal fees and blood group testing expenses incurred during the period that she had resisted admitting T.B.'s paternity.

## Discussion

Under Ind.Code § 31–6–6.1–2(c), "[i]n every [paternity] case, the child, the child's mother, and any person alleged to be the father are necessary parties to the action." A "necessary party" is one who must be joined in the action for a just adjudication. *J.E. v. N.W.S. by S.L.S.* (1991), Ind.App., 582 N.E.2d 829, 832. A judgment entered without the presence of indispensable parties is

void, but it may be appealed for the sole purpose of setting it aside. *Noblitt v. Metropolitan Plan Commission of Marion County* (1961), 131 Ind.App. 497, 172 N.E.2d 580, 583. Thus, a paternity suit where the child has not been joined cannot result in a valid judgment. As H.J.F. was not joined in the present case, the judgment is void.

■ We note that "a petition to establish paternity must show with crystal clarity that the child is actually a party to the action and not simply the subject or object of the action." *J.E.*, 582 N.E.2d at 832. Thus, a caption worded "In the Matter of the Paternity of A.B.C. by his next friend D.E.F." reasonably shows that the action is brought with the child as a party. *Id.* The wording "In the Matter of the Paternity of A.B.C.," without more, does not suffice to create party status for A.B.C. *Id.* In the present case, the caption is of the latter type, and no evidence exists in the record to indicate that H.J.F. was ever a party to the action.

■ The policies underlying the strict rule that the child is a necessary party to a paternity action are at least two-fold. First, the rule ensures that the paternity judgment is *res judicata* as to all interested parties, thereby acting as a bar to future actions on the same issues.[1] Second, the rule implements the general policy under Indiana law that the welfare of the child is paramount in a paternity action. *O.S. v. J.M.* (1982), Ind. App., 436 N.E.2d 871, 873. In Indiana, a "child is not a chattel the title to which is in dispute between rival claimants." *A.B. v. C.D.* (1971), 150 Ind.App. 535, 277 N.E.2d 599, 617. Our law recognizes that in a paternity action, the child's interests are not necessarily the same as the interests of the parents or of the State. *Kieler v. C.A.T.* (1993), Ind.App., 616 N.E.2d 34, 38–39. The protection of those interests demands the joining of the child as a necessary party.

Accordingly, the absence of H.J.F. as a party in the present case mandates reversal.

We next address D.F.'s contention that the court erred in failing to appoint a guardian *ad litem* to represent the interests of H.J.F. We address this issue, despite vacating the judgment, because this question will present itself on remand.

D.F. concedes that there exists no direct statutory requirement for the appointment of a guardian *ad litem* in paternity cases. D.F. argues by analogy that because a guardian *ad litem* is required in certain proceedings on the termination of parental rights and in some juvenile proceedings, the requirement should also apply to paternity actions. She further contends that the state's statutory policy of providing "a judicial procedure that insures fair hearings and recognizes and enforces the constitutional and other legal rights of children and their parents" supports finding such a requirement. I.C. § 31–6–1–1. After an examination of the applicable statutory provisions and case law, we agree that under certain circumstances, a guardian *ad litem* must be appointed to represent the child in a paternity proceeding.

A guardian *ad litem* is a person appointed by a court "to represent and protect the best interests of a child and to provide that child with services requested by the court, including researching, examining, advocating, facilitating, and monitoring the child's situation." I.C. § 31–6–1–18; *see also* I.C. § 31–6–3–4. Under Ind. Trial Rule 17(C), if a minor is not represented or is not adequately represented in an action in which the minor is a party, "the court shall appoint a guardian *ad litem* for him." A guardian *ad litem* is most often appointed in a termination of parental rights proceeding, a proceeding to determine that a minor is a child in need of services (CHINS), or a proceeding in which a minor is a defendant. Guardians *ad litem* are also employed to monitor a custody or visitation order or to represent a minor's interests in an estate. No Indiana case has yet held that the appointment of a guardian *ad litem* is mandatory in a paternity case.

---

1. The long statute of limitations in paternity actions makes this especially important. Although the mother or a man claiming paternity must file an action within two years after the child is born, subject to certain exceptions, the child may file a petition at any time before reaching twenty years of age, subject to exceptions. I.C. § 31–6–6.1–6(a), (b).

■ As D.F. contends, however, the appointment of a guardian *ad litem* is mandatory in some situations. In a termination of parental rights proceeding, the appointment of a guardian *ad litem* is mandatory "[i]f a parent objects to the termination of the parent-child relationship." I.C. § 31–6–5–4. In a CHINS proceeding, a guardian *ad litem* is mandatory in some situations when a child needs care, treatment, or rehabilitation that is unlikely to be provided without the coercive intervention of the court. I.C. § 31–6–4–13.6. Where a minor is a defendant, all courts have the power to appoint a guardian *ad litem* to defend the minor's interests (I.C. § 34–2–3–1), and it is mandatory that the court "consider the necessity of appointing a guardian *ad litem* before permitting a minor defendant to proceed without one." *Crayne v. M.K.R.L.* (1980), Ind.App., 413 N.E.2d 311, 313.

In the paternity context, three Indiana cases have suggested that a guardian *ad litem* should be appointed when a putative father seeks to overcome the presumption of legitimacy of a child born during the mother's marriage. The earliest such case, *A.B.*, *supra*, dealt with the potential conflicts of interest inherent in the situation where a putative father seeks a determination of paternity. In 1971, the court still could write that "Indiana, as is true of most states, has never been confronted with a self-proclaimed adulterer as the would-be bastardizer." *Id.*, 277 N.E.2d at 614. Judge White found that a child's interests are in greater need of independent protection when the paternity action has been brought by a putative father, and quoted with approval the reasoning of the court in *Matter of P. v. Department of Health* (1951), 200 Misc. 1090, 107 N.Y.S.2d 586:

"[I]n my view, the infant should be directly represented in a proceeding such as this, where the granting of the petitioner's application would mean that (however undesired or unjust so far as the infant is concerned) he will forever be subject to the psychological hazard if not the public handicap of illegitimacy.... I am not warranted in ignoring the child's right to be represented or heard in a proceeding which may have a lasting bearing on the determination of his parentage.... Suppose the husband has a substantial estate—should there even be any tangential determination by this court that the husband is not the father of the child—and thus render it more difficult, if not impossible, for the infant in later life to obtain a just inheritance? *In [Matter of] Melis v. Department of Health of City of New York* [ (1940) ], 260 App.Div. 772, 775, 24 N.Y.S.2d 51, 55, the court indicated that in a suit for a declaratory judgment, 'the infant, whose rights are paramount, should be made a party in the manner provided by law ... and a guardian *ad litem* appointed to protect its interests. (Citing cases).' I think that without question the same procedure should be followed here."

*A.B.*, 277 N.E.2d at 614–15 (quoting *Matter of P.*, 107 N.Y.S.2d at 591).

More recently, in *In re S.R.I.* (1992), Ind. App., 588 N.E.2d 1278, Judge Hoffman found it "disturbing that a guardian *ad litem* was not appointed ... for the child, the most interested party in the entire proceedings." *Id.* at 1280 n. 2. On transfer, Chief Justice Shepard agreed that the appointment of a guardian

"would be appropriate in this unusual case. 'Courts are charged with the duty of protecting the rights of infants in controversies over which they acquire jurisdiction, and guardians *ad litem* serve as their agents in discharge of this duty.' *Gibbs v. Potter* (1906), 166 Ind. 471, 475, 77 N.E. 942, 943–44.... On remand, the trial court should appoint a guardian *ad litem* for S.R.I. to ensure that his interests are properly presented at the paternity hearing."

*In re S.R.I.* (1992), Ind., 602 N.E.2d 1014, 1017.

The supreme court does not specify what aspect of "this unusual case" suggests the appropriateness of a guardian *ad litem*. A clue may be found several paragraphs earlier in the opinion, where the court uses the term "unusual circumstances" to describe the facts of the action, which had been brought by the putative father against the child's mother and the presumptive father. *Id.* at 1016.

The putative father had the burden of putting forth "direct, clear, and convincing" evidence to rebut the presumption that a child born during the mother's marriage is legitimate. *Id.* These facts are nearly identical to the facts at hand, except that in *S.R.I.* the mother and presumptive father were no longer married by the time of the action. *See also Cooper v. Cooper* (1993), Ind.App., 608 N.E.2d 1386, 1387 n. 2 (noting that a guardian *ad litem* had been appointed to protect the child's rights where the presumptive father denied paternity in a dissolution proceeding).

Underlying these decisions is a policy recognizing the importance of protecting the child's interests where there exists a potential adversity of interests between the mother and child. A child's interests in a paternity determination include matters of money, familial bonds, cultural heritage, and medical history, and these interests may clash with the mother's interests in preserving her marriage or preventing the child's relationship with the presumptive father from being disturbed. As Judge Rucker has explained,

> "Although securing support and education for a child born out of wedlock is the primary purpose of a paternity action, *Rundel v. Shady* (1986), Ind.App., 492 N.E.2d 694, the interest of a child in establishing paternity is not limited to child support. A child born out of wedlock who establishes paternity in a timely fashion has certain rights to inherit from the father, Ind.Code § 29–1–2–7(b), as well as certain rights to claim other economic benefits upon the death of the father. *S.V. v. The Estate of James A. Bellamy* (1991), Ind.App., 579 N.E.2d 144. These rights, in addition to the right to receive payment of child support, are of constitutional dimension and are entitled to protection under the equal protection clause of the United States Constitution. *Mills v. Habluetzel* (1982), 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770."

*J.E.*, Ind.App., 582 N.E.2d at 831.

Moreover, we agree with D.F. that the policies underlying the requirement of a guardian *ad litem* in certain parental rights termination cases are applicable in the paternity context. In *Kieler, supra,* where a mother who was married at the time of the child's conception and birth filed a paternity action against the putative father, the court stated, "if the child's interests must be protected when parental rights and duties may be terminated, these same interests should be protected when parental rights and duties may be established or lost." 616 N.E.2d at 39. We agree, although we find that a distinction must be made between paternity proceedings where an unmarried mother seeks to establish paternity against a putative father and proceedings where a presumptive father's parental rights and duties are at stake. In the former case, the paternity action is usually instituted primarily to obtain child support, and the interests of mother and child are generally concordant; that is, the child's interests, while they may be different and more expansive than the mother's interests, are not adverse to the mother's interests. Thus, a guardian *ad litem* frequently may not be required. In the latter case, where the child's interests are always potentially adverse to the mother's, and where the presumptive father's parental rights may be terminated, a guardian *ad litem* to protect the child's interests is essential.

■ Accordingly, we hold that a guardian *ad litem* must be appointed to protect the child's interests in all cases where a party seeks to overcome the presumption that a child born in wedlock is legitimate.

■ T.B. argues that D.F. waived this issue by failing to request a guardian *ad litem* for the child at trial. We disagree. This argument implies that D.F. had a duty to protect H.J.F.'s right to representation and had the ability to waive this right. As the court held in *Matter of S.L.* (1992), Ind. App., 599 N.E.2d 227:

> "Waiver has been defined as an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intention to relinquish it. [citation omitted] Waiver is usually a matter of personal privilege; it must be made by the person whose rights or remedies are to be affected. [citation omitted] The

statutory [or common law] right to have a guardian *ad litem* or special advocate to represent their best interest belongs to the children...."

*Id.* at 229. D.F. cannot waive a right belonging to H.J.F. except under the strict procedural requirements of I.C. § 31–6–7–3, which permits such waiver only if the parent has "no interest adverse to the child." I.C. § 31–6–7–3(a)(2)(B). In the present case, the potentially adverse interests of H.J.F. in the paternity proceeding preclude waiver by D.F.

■ T.B. also argues that D.F. has no standing to object to the court's failure to appoint a guardian *ad litem* because she has not shown she was harmed by the court's action. T.B. cites *Rumple v. Bloomington Hospital* (1981), Ind.App., 422 N.E.2d 1309, where the court held that in order to have standing, a plaintiff must show he was harmed by the court's action and must assert a personal right which was violated. *Id.* at 1314. The *Rumple* court noted, however, that exceptions exist to this general rule. One such exception was carved out in *S.L., supra,* where the court held that in a parental rights termination proceeding, a mother has standing to litigate the issue of the child's right to a guardian *ad litem* because the mother's fundamental right to a parent-child relationship was impacted by the lack of independent representation of the child's interest. *S.L.,* 599 N.E.2d at 229. In the paternity context, the mother's fundamental right to a parent-child relationship with the child is not threatened; nonetheless, that relationship may be severely impacted by the court's paternity determination. We find that potential impact sufficient to extend the exception to the present case, and we believe, furthermore, that in the present case, as in *S.L.,* the child's lack of representation effectively foreclosed any opportunity for her to claim her right to representation by argument on her own behalf on appeal.

Accordingly, we find that the court's judgment is void for failure to join H.J.F. in the action as a necessary party and that the court erred in not appointing a guardian *ad litem* for H.J.F. We vacate and remand to the trial court to set aside its previous order and judgment.

VACATED AND REMANDED.

FRIEDLANDER and RUCKER, JJ., concur.