**In the Matter of the PATERNITY OF C.M.R., A Child Born Out of Wedlock.**

**No. 25A05–0612–JV–732.**

Court of Appeals of Indiana.

Aug. 7, 2007.

---

Phillip A. Renz, Carson Boxberger LLP, Fort Wayne, IN, Attorney for Appellant.

Richard A. Brown, Prosecuting Attorney of Fulton County, Rochester, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Kari Schenkel brings this interlocutory appeal from the trial court's order for the genetic testing of her and her two children to determine whether their deceased father, Joseph Miller, is the father of a third child, C.M.R. We vacate and remand.

### Issue

We raise sua sponte the following dispositive issue: whether the order for genetic testing is void due to a failure to join necessary parties.

### Facts and Procedural History

The relevant facts are undisputed. Miller lived with Schenkel from February 2000 until several months before his death in July 2002. Schenkel gave birth to two children during this time: As.M., born May 3, 2000, and Ai.M., born June 11, 2001. Schenkel initiated a paternity action in Huntington Circuit Court. Miller admitted to being the children's father, and paternity was established on April 12, 2002. A support order was entered as to As.M. and Ai.M., and Miller complied with that order. Miller died intestate on July 10, 2002.

Jennifer Lee Randall gave birth to C.M.R. on December 21, 1999, at which time Miller and Schenkel were already involved in a relationship. On April 6, 2005, Randall filed with the trial court a petition to establish paternity alleging that Miller was C.M.R.'s father.[1] On June 28,

---

1. The copy of the petition in the appellant's appendix is signed and verified by Randall. Appellant's App. at 5. The chronological case summary ("CCS") indicates that Title IV–D

2005, Title IV–D prosecuting attorney Richard Brown ("the State") filed on C.M.R.'s behalf a motion for paternity testing using genetic samples from Miller's autopsy. The trial court granted the motion that same day.

On July 7, 2006, the State filed another motion for genetic testing pursuant to Indiana Code Section 31–14–6–1. *See* Ind. Code § 31–14–6–1 ("Upon the motion of any party, the court shall order all of the *parties* to a paternity action to undergo blood or genetic testing. A qualified expert approved by the court shall perform the tests.") (emphasis added). The motion stated that Miller's remains were insufficient to yield usable results and requested that Schenkel and her two children be tested to determine by way of comparison whether Miller is C.M.R.'s father for the "sole purpose" of ascertaining whether C.M.R. is eligible for social security survivor benefits. Appellant's App. at 8. The chronological case summary ("CCS") indicates that the motion was served on Schenkel on July 13, 2006. Schenkel and her children were not named as parties to the paternity action, however.

On September 15, 2006, Schenkel filed a response in opposition ·to the motion for genetic testing, which reads in pertinent part as follows:

> [Schenkel], by her counsel, concedes that the Prosecuting Attorney has authority to bring a paternity action on behalf of [C.M.R.], pursuant to Indiana [Code] § 31–14–4–2 and § 31–14–5–2[2] and as they were interpreted in the case of [*In re Paternity of N.D.J.*, 765 N.E.2d 682 (Ind.Ct.App.2002) ].

However, [Schenkel's] position is that the Motion for Genetic Testing is untimely in that even if the test was conducted and resulted in favorable results for the Petitioner, [C.M.R.] would still not qualify for social security survivor benefits.

*Id.* at 10. Schenkel asserted that, pursuant to federal law, eligibility for survivor benefits is contingent upon whether the applicant could inherit the deceased's personal property under the inheritance laws of the state in which the decedent had his permanent home when he died. *Id.* at 10–11 (citing 20 C.F.R. § 404.355). Schenkel further asserted that C.M.R. could not inherit from Miller under Indiana's inheritance laws because paternity was not established during Miller's lifetime or within five months of his death. *Id.* at 11 (citing Ind.Code § 29–1–2–7(b)(2)("For the purpose of inheritance (on the paternal side) to, through, and from a child born out of wedlock, the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, if one (1) of the following requirements is met: ... (2) The paternity of a child who was less than twenty (20) years of age when the father died has been established by law in a cause of action that is filed: (A) during the father's lifetime; or (B) within five (5) months after the father's death.")).

After a hearing, the trial court entered an order for genetic testing on September 26, 2006. The order states that the results of the tests "shall be admissible as evidence to prove the truth of the matter asserted therein, i.e. to include or exclude

---

prosecuting attorney Richard Brown entered his appearance on that date and filed the petition, *id.* at 1, but his name does not appear on the petition.

**2.** *See* Ind.Code § 31–14–4–2(a) ("Upon the request of: (1) the child; [or] (2) the mother

...; the prosecuting attorney shall file a paternity action and represent the child in that action."); Ind.Code § 31–14–5–2(a) ("A person less than eighteen (18) years of age may file a petition if the person is competent except for the person's age.").

Joseph Miller as the father of the child, [C.M.R.], without further evidentiary foundation at any trial of this matter to the extent allowed by I.C. 31–14–6–2 and 31–14–6–3." *Id.* at 4. *See* Ind.Code § 31–14–6–2 ("A *party* may object to the admissibility of genetic test results obtained under section 1 of this chapter ... if the *party* files a written objection at least thirty (30) days before a scheduled hearing at which the test results may be offered as evidence. If a *party* does not file an objection under this section ..., the test results are admissible as evidence of paternity without the necessity of: (1) foundation testimony; or (2) other proof; regarding the accuracy of the test results.") (emphases added); Ind.Code § 31–14–6–3 ("The results of the tests and the finding of the expert: (1) constitute conclusive evidence if the results and finding exclude a party as the biological father of the child; and (2) are admissible in all paternity proceedings, unless the court excludes the results or finding for good cause.").

Schenkel petitioned to certify the order for interlocutory appeal. Over the State's objection, the trial court certified its order on November 16, 2006. We accepted jurisdiction on January 18, 2007.

### Discussion and Decision

On appeal, Schenkel argues for the first time in this proceeding that the paternity action is untimely pursuant to Indiana Code Section 31–14–5–5, which states, "Notwithstanding any other provision of this chapter, [a paternity] action must be filed: (1) during the lifetime of the alleged father; or (2) not later than five (5) months after his death." The State contends that Schenkel has waived this argument by raising it for the first time on appeal. *See, e.g., Lea v. Lea,* 691 N.E.2d 1214, 1218 (Ind.1998) ("An issue not raised at trial cannot be advanced for the first time on appeal."); *see also Ventura County, State of Cal. v. Neice,* 434 N.E.2d 907, 912 (Ind.Ct.App.1982) (stating that statute of limitations in paternity action is affirmative defense and may be waived).[3]

 We need not specifically address these assertions, however, because a cursory review of the record reveals that several necessary parties have not been joined in this paternity action. Indiana Code Section 31–14–5–6 provides that "[t]he child, the child's mother, and each person alleged to be the father are necessary parties to each [paternity] action." "A 'necessary party' is one who must be joined in the action for a just adjudication." *Matter of Paternity of H.J.F.,* 634 N.E.2d 551, 552 (Ind.Ct.App.1994), *abrogated on other grounds by K.S. v. R.S.,* 669 N.E.2d 399 (Ind.1996).

Although there is some precedent to suggest otherwise, we assume for purposes of this appeal that C.M.R., who is represented by the State pursuant to Indiana Code Section 31–14–4–2, is a party to this action.[4]

---

3. The State also makes the disingenuous argument that Schenkel "affirmatively told the court that Appellee had the right to maintain this action and never challenged the validity of the action." Appellee's Br. at 8. On the contrary, Schenkel merely acknowledged that the State had the authority to bring a paternity action on C.M.R.'s behalf pursuant to Indiana Code Sections 31–14–4–2 and 31–14–5–2.

4. *Cf. H.J.F.,* 634 N.E.2d at 553 ("[A] petition to establish paternity must show with crystal clarity that the child is actually a party to the action and not simply the subject or object of the action. Thus, a caption worded "In the Matter of the Paternity of A.B.C. by his next friend D.E.F." reasonably shows that the action is brought with the child as a party. The wording "In the Matter of the Paternity of A.B.C.," without more, does not suffice to create party status for A.B.C.") (citations and quotation marks omitted); *In re Paternity of*

Randall, C.M.R.'s mother, signed and verified the petition to establish paternity, but there is no indication that she has been named a party to this action.

Miller, the person alleged to be the father, is deceased. The State did not petition to open Miller's estate so that its interests (and the interests of Miller's heirs) could be represented. Instead, without giving anyone notice or an opportunity to be heard, the State obtained a court order to ship Miller's remains to a lab for genetic testing.[5] In *K.S.*, our supreme court stated that "failure to name a *child* as a party in a paternity action does not necessarily render the judgment or agreement void, but instead merely voidable." 669 N.E.2d at 405 (emphasis added). Here, the alleged father is deceased and his estate unopened and unrepresented; as such, there is no one to challenge the validity of the order for genetic testing, let alone the final paternity judgment, on his behalf. We therefore conclude that the order for genetic testing is void and that Miller's estate must be joined as a necessary party and thereby given an opportunity to appear, answer, and raise appropriate defenses to the paternity action.

As for Schenkel, we note that Indiana Code Section 31–14–6–1 contemplates that only parties to a paternity action may be ordered to undergo genetic testing. *See* Ind.Code § 31–14–6–1 ("Upon the motion of any party, the court shall order all of the *parties* to a paternity action to undergo blood or genetic testing. A qualified expert approved by the court shall perform the tests.") (emphasis added).

The same may be said for Schenkel's children, As.M. and Ai.M. The record suggests that the children would be necessary parties to the action in any event. *See H.J.F.*, 634 N.E.2d at 552; *see also* Ind. Trial Rule 19(A) ("A person who is subject to service of process shall be joined as a party in the action if: (1) in his absence complete relief cannot be accorded among those already parties; or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (a) as a practical matter impair or impede his ability to protect that interest, or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party."). Assuming, as the record suggests, that As.M. and Ai.M. are Miller's heirs and are receiving social security survivor benefits as a result of Miller's death, they would certainly claim an interest relating to the subject of this paternity action, and disposing of the action in their absence as parties may impair or impede their ability to protect that interest.[6] If these assumptions prove correct, then the children should be

*V.M.E.*, 668 N.E.2d 715, 717 (Ind.Ct.App. 1996) (same). The instant case is captioned "In the Matter of the Paternity of C.M.R., A Child Born Out of Wedlock." Appellant's App. at 5 (petition to establish paternity). Our research indicates, however, that no cases have mentioned this strict captioning requirement since *V.M.E.* in 1996.

5. It is troubling to contemplate what might have transpired had the laboratory been able to obtain usable results from Miller's DNA establishing his paternity of C.M.R.

6. The Social Security Administration's website states that surviving "[c]hildren receive 75 percent of the worker's benefit amount" and that there is a limit to the benefits that can be paid to "family members each month. The limit varies, but is generally between 150 and 180 percent of the deceased's benefit amount." Social Security Online, Survivors Benefits, SSA Publication No. 05–10084, July 2006, http://www.ssa.gov/pubs/10084.html (last visited July 16, 2007).

joined as parties and given an opportunity to appear, answer, and raise appropriate defenses, including the five-month limitation period of Indiana Code Section 31–14–5–5.[7]

The State cites *S.V. v. Estate of Bellamy*, 579 N.E.2d 144 (Ind.Ct.App.1991), for the proposition that Schenkel and her children would be unable to raise Indiana Code Section 31–14–5–5 as an affirmative defense in any case. We disagree. In that case, the mother of a child born eight months after the alleged father's death filed a paternity action against the father's estate two weeks before the child was born. The trial court dismissed the action as untimely pursuant to Indiana Code Section 29–1–2–7(b). Another panel of this Court held that the action was barred by that statute for purposes of establishing a right of inheritance. The court went on to say,

> In denying the paternity action, the trial court undoubtedly interpreted I.C. 29–1–2–7(b) to prohibit *all* paternity actions for *any* purpose when they are commenced more than five months after the putative father's death. The five-month limit, however, affects an action only to the extent that it seeks to establish a right of inheritance. It is not a statute of limitations applicable to paternity actions in general. If a paternity action is filed on behalf of a child after the five-month period, the child may not inherit from its father's estate, even if the action is successful. However, the action may still be prosecuted and, if

successful, the child may still claim other attendant benefits.

*Id.* at 148 (footnote omitted).[8] We respectfully observe, however, that *S.V.* failed to account for Indiana Code Section 31–6–6.1–6(d), the predecessor of Indiana Code Section 31–14–5–5, which is "a statute of limitations applicable to paternity actions in general." For that reason, we do not find *S.V.* persuasive here.

In sum, we conclude that the order for genetic testing is void due to a failure to join necessary parties. We therefore vacate the order and remand with instructions to determine which of the participants in this paternity action should be joined as parties and to allow those parties to be served and given an opportunity to appear, answer, and defend their interests as appropriate.

Vacated and remanded.

BAKER, C.J., and FRIEDLANDER, J., concur.

---

7. It is questionable whether Schenkel and her children, as third parties subject to a discovery order, would have standing to raise the statute of limitations as an affirmative defense. Given the likelihood that Schenkel and her children will be joined in the paternity action on remand and thereby acquire standing to raise the defense, we do not answer that question here.

8. The court stated that "[t]angible benefits to a child may include, among others, relevant social security survivor benefits, employee death benefits, and even proceeds of life insurance policies which include the insured's 'children' as beneficiaries and do not pass by way of inheritance." *S.V.*, 579 N.E.2d at 148 n. 6.