S.V., on Behalf of Her Unborn Child, Appellant–Petitioner,

v.

The ESTATE OF James A. BELLAMY, Appellee–Respondent.

No. 18A02–9010–CV–570.

Court of Appeals of Indiana, Second District.

Oct. 10, 1991.

David W. Stone, IV, Anderson, Robert L. Lewis, Gary, for appellant-petitioner.

T. Eric Evans, Muncie, for appellee-respondent.

SULLIVAN, Judge.

S.V., on behalf of her child who was born subsequent to the commencement of this action, appeals from the dismissal of her Complaint for Paternity filed against the estate of James Bellamy and which alleged that James Bellamy (Bellamy), deceased, was the unborn child's father.

We reverse.

S.V. argues that the trial court erred when it held that the petition to establish paternity was time-barred; or, in the alternative, that I.C. 29–1–2–7(b) (Burns Code Ed.1989), the statute which sets forth the limitation period, if construed so as to time-bar her petition, is unconstitutional as violative of the equal protection clause of the Fourteenth Amendment. This issue has not been previously addressed in Indiana.

The pertinent facts are not in dispute. Bellamy died on July 11, 1988. At the time of Bellamy's death, S.V. was approximately one month pregnant with the child in whose behalf the instant action was brought. S.V. claimed that Bellamy was her unborn child's father, and on March 1, 1989, instituted proceedings to establish paternity. On March 16, 1989, the child was born. On October 26, 1989, the Estate filed its Motion to Dismiss, alleging that the paternity action was not timely filed, pursuant to I.C. 29–1–2–7(b). On July 13, 1990, after a hearing, the trial court granted the Estate's Motion to Dismiss. S.V. appeals from that judgment.

The issues presented for our review involve the interpretation and constitutionality of I.C. 29–1–2–7(b), which states:

"(b) For the purpose of inheritance (on the paternal side) to, through, and from a child born out of wedlock, the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, if:

(1) The paternity of the child has been established by law in a cause of action that is filed:

(A) During the father's lifetime; or

(B) *Within five (5) months after the father's death....*" (emphasis supplied).

### I. *Statutory Construction*

■ S.V. argues that I.C. 29–1–2–7(b) should be construed to mean that the five-month time period in which to file a pater- nity action against a deceased putative father, for inheritance purposes, does not commence to run until there is a person in being on whose behalf the action may be brought—that is, until the child is born. S.V. seeks to buttress her argument with a recitation and application of rules of statutory construction. However, this court is obliged to decline application of those rules of construction when, as here, the statute's meaning is plain and unambiguous.

■ When a statute is plain and unambiguous, this court may not "interpret" or substitute its own meanings for words the meanings of which are otherwise clear. We may not give an interpretation different than that which the legislature clearly and expressly intended. *Kemper v. Warren Petroleum Corp. Inc.* (1983) 2d Dist. Ind.App., 451 N.E.2d 1115. The statute in question clearly states that in order to establish inheritance rights the action must be commenced within five months of the death of the alleged father. No exception is made for, nor reference made to, situations involving posthumous children. The only triggering event identified in the statute is the death of the putative father. S.V.'s invitation to insert a second triggering event, i.e., the birth of a posthumous child, is more properly directed to the legislature because it amounts to a request to rewrite the statute.[1]

We hold that, for inheritance purposes, I.C. 29–1–2–7(b) requires paternity actions to be filed within five months after the death of the putative father, notwithstanding the fact that the action is filed on behalf of a posthumous child.

### II. *Constitutionality*

■ S.V. asserts that I.C. 29–1–2–7(b) violates the equal protection clause of the Fourteenth Amendment as applied to posthumous children. When considering whether state legislation violates the equal protection clause of the Fourteenth Amendment, courts apply different levels of scru-

---

1. S.V. presents to us several policy arguments, some of them persuasive, in support of her position that posthumous children should not be bound in the same way as illegitimate children already born at the time of their putative father's death. Any treatment of such arguments would be mere surplusage in view of our holdings with regard to the statute's meaning and constitutionality.

tiny to different types of classifications made. It is not entirely clear whether S.V. claims that the class which is being discriminated against is composed of only posthumous illegitimate children [2] or whether she refers to all illegitimate children.[3] However, it seems clear that illegitimacy is the essence of the claimed classification. Courts generally apply an intermediate level of scrutiny to discriminatory classifications based upon gender or illegitimacy. *Clark v. Jeter* (1988), 486 U.S. 456, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465. In order to withstand intermediate scrutiny, a statutory classification must be substantially related to an important government objective. *Id.*

The United States Supreme Court has adopted a framework for evaluating equal protection challenges to statutes of limitations that apply to suits to establish paternity, and which thereby limit the child's ability to obtain support.

"First, the period for obtaining support ... must be sufficiently long in duration to present a reasonable opportunity for those with an interest in such children to assert claims on their behalf. Second, any time limitation placed on that opportunity must be substantially related to the State's interest in avoiding the litigation of stale or fraudulent claims." *Mills v. Habluetzel* (1982), 456 U.S. 91, 99–100, 102 S.Ct. 1549, 1554–1555, 71 L.Ed.2d 770.

The standard adopted in *Mills* is therefore a two-pronged test in which courts examine 1) the limit placed by the statute, and 2) the state's interest in setting that limit. *See also S.M.V. v. Littlepage* (1982) 1st Dist. Ind.App., 443 N.E.2d 103, 110, (Ratliff, J., concurring).

I.C. 29–1–2–7(b) grants five months following the putative father's death within which to file a paternity action. At that time the right to establish legal paternity for inheritance purposes is extinguished. S.V. argues that the five-month period does not pass constitutional muster, citing several Indiana and United States Supreme Court cases which struck down statutes of limitations which granted periods even longer than five months. In *Clark, supra,* the United States Supreme Court held that a Pennsylvania statute allowing six years within which to bring a paternity action violated the equal protection clause. The statute had been amended while the appeal was pending. 108 S.Ct. at 1915. The interest which the State claimed to justify its six-year limitation was the avoidance of stale or fraudulent claims. *Id.* The Court rejected this reason as insufficient:

"We are, however, confident that the 6–year statute of limitations is not substantially related to Pennsylvania's interest in avoiding the litigation of stale or fraudulent claims....

A more recent indication that Pennsylvania does not consider proof problems insurmountable is the enactment by the Pennsylvania Legislature in 1985 of an 18–year statute of limitations for paternity and support actions.... Nevertheless, the new statute is a tacit concession that proof problems are not overwhelming." *Clark, supra,* 108 S.Ct. at 1915–16.

In *In the Matter of the Paternity of M.D.H., R.L.W., and C.D.M., Appellants* (1982) 1st Dist.Ind.App., 437 N.E.2d 119, the court held that a two-year statute of limitations for bringing paternity actions was unconstitutional.

"There can be no question but that the state has a legitimate interest in preventing stale or fraudulent claims and that such legitimate interest is the fundamental rationale of statutes of limitation.

---

**2.** "It is fundamentally unjust to hold that one illegitimate child is entitled to receive the entire estate merely due to the fortuitous circumstances that he was born prior to the death of the decedent and had an opportunity to have his paternity established while the plaintiff in this action was a posthumous child who was born more than 5 months after the death of the alleged father." Brief of Appellant at 30.

**3.** "It has been recognized that a statute which prohibits a [sic] illegitimate child from inheriting from his father who dies intestate is a denial of equal protection of the law." Brief of Appellant at 27.

... [B]ecause we find that problems of proof in paternity cases are no greater than, if as great as, problems of proof in other causes of action whose statutes of limitation are tolled by infancy, we hold there is no substantial, or even reasonable, state interest which would justify any longer the invidious barrier erected before the illegitimate child who after two years is precluded from bringing a support action if it depends upon a determination of paternity." *Matter of M.D.H., supra,* 437 N.E.2d at 128–29.

The other cases cited by S.V. are similar to *Clark* and *Matter of M.D.H.* in that they involved actions for support in which the identified state interest was the prevention of stale and fraudulent claims. As is apparent in the above quoted excerpts, courts struck down the disputed statutes based upon a determination that the state's interest simply did not justify the imposition of the complained-of limitation period. Therefore, the statutes were found to be constitutionally infirm. However, we do not find S.V.'s authority persuasive. Those cases are distinguishable in one critical aspect: The nature of the State's interest in setting the limitation period.

Prevention of stale and fraudulent claims is a state's interest offered as justification for I.C. 29–1–2–7(b). *See Matter of Estate of Edwards* (1990) 1st Dist.Ind.App., 562 N.E.2d 763, 766. In light of *Clark* and *Matter of M.D.H.,* the constitutionality of this statute could not be sustained based upon that State interest alone. However, the limit placed by I.C. 29–1–2–7(b) is also justified by the State's interest in the orderly disposition of decedents' estates. *Id.* at 767. For this reason, we are persuaded that the instant case is more closely analogous to *Lalli v. Lalli* (1978) 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503.

In *Lalli,* the Supreme Court upheld, against an equal protection challenge, a New York Statute [4] which required that paternity be established by an order of filiation made by a court of competent jurisdiction before the death of the putative father. We note initially that the New York Statute was even more restrictive than I.C. 29–1–2–7(b), which grants until five months *after* the putative father's death to *file* the action. The Court identified the State's interest under section 4–1.2 as the "orderly settlement of estates and the dependability of titles to property passing under intestacy laws." *Lalli, supra,* 99 S.Ct. at 522. Therefore the State's interest in *Lalli* was substantially similar to the State's interest here. The Court stated that it had long "recognized that [the just and orderly disposition of property at death] is an area with which the States have an interest of considerable magnitude." *Lalli, supra,* 99 S.Ct. at 524–25. The Court further stated that "[t]his interest is directly implicated in paternal inheritance by illegitimate children...." *Id.* at 525.

The Court cited the Bennett Commission's [5] report, in which the problem that the statute sought to address (i.e. State's interest) was starkly put:

"[H]ow achieve finality of decree in *any* estate when there always exists the possibility however remote of a secret illegitimate lurking in the buried past of a parent or an ancestor of a class of beneficiaries? Finality in decree is essential in the Surrogates' Court since title to real property passes under such decree." (emphasis in original) *Id.* at 526.

---

4. Section 4–1.2(a) of New York's Estates, Powers, and Trusts Law provided, in pertinent part: "(2) An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has, *during the lifetime of the father,* made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child." (Emphasis supplied).

5. The Bennett Commission's full title was the Temporary State Commission on the Modernization, Revision, and Simplification of the Law of Estates. The group consisted of individuals experienced in the practical problems of estate administration. *Lalli, supra,* 99 S.Ct. at 525. The Commission's report and recommendations included what later was to become section 4–1.2. *Id.*

The Court concluded that New York's requirement that illegitimate children prove paternity before the death of their putative father was substantially related to the important state interests which the statute was intended to promote, and that the statute did not violate the equal protection clause. *Id.*

In the instant case, the State interest promoted by I.C. 29-1-2-7(b) is virtually identical to the interest which the *Lalli* Court utilized to justify the imposition of a statute of limitations even stricter than the one complained of here. We are persuaded that I.C. 29-1-2-7(b) reflects a carefully considered legislative judgment of how best to balance the State's interest in the orderly, prompt, and final administration of estates with the illegitimate child's interest in proving paternity and realizing the benefits of inheritance. *See Lalli, supra,* 99 S.Ct. at 527.

■ We are mindful that our holding will unquestionably work a hardship on some illegitimate children who, although not in compliance with the statute's five-month deadline, might nonetheless be able to establish paternity and their right to inherit from their deceased father without seriously disrupting the administration of the estate. However, "few statutory classifications are entirely free from the criticism that they sometimes produce inequitable results." *Id.* Although we lament that the drawing of any line of demarcation necessarily means that some will occasionally find themselves, barely, on the "wrong" side, lawmaking is often an exercise in line-drawing. In *Chase Securities Corp. v. Donaldson* (1945) 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628, the United States Supreme Court addressed this issue specifically with regard to statutes of limitations:

> "Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles.... They are by definition arbitrary, and their op-

eration does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate."

The Indiana General Assembly chose to "draw the line" for inheritance purposes at five months following a putative father's death. Our inquiry in an equal protection challenge does not focus upon whether a law is abstractly "fair," but rather upon whether the statute's relationship to the state's interest intended to be promoted is so tenuous as to lack the rationality contemplated by the Fourteenth Amendment. *Lalli, supra,* 99 S.Ct. at 527. We do not find that rationality lacking in the instant case.

We hold that I.C. 29-1-2-7(b) allows five months following the date of death of a putative father in which to file a paternity action for purposes of inheritance, notwithstanding that the child on whose behalf the action is filed is a posthumous child, and that in so doing the statute is not in violation of the equal protection clause of the Fourteenth Amendment. Even so, we must reverse the trial court's dismissal of S.V.'s Complaint for Paternity.

### III. *Statutory Scope*

■ In denying the paternity action, the trial court undoubtedly interpreted I.C. 29-1-2-7(b) to prohibit *all* paternity actions for *any* purpose when they are commenced more than five months after the putative father's death. The five-month limit, however, affects an action only to the extent that it seeks to establish a right of inheritance. It is not a statute of limitations applicable to paternity actions in general. If a paternity action is filed on behalf of a child after the five-month period, the child may not inherit from its father's estate, even if the action is successful. However, the action may still be prosecuted and, if successful, the child may still claim other attendant benefits.[6] Therefore, the trial

---

**6.** Tangible benefits to a child may include, among others, relevant social security survivor benefits, employee death benefits, and even pro-

ceeds of life insurance policies which include the insured's "children" as beneficiaries and do not pass by way of inheritance.

court erred when it dismissed S.V.'s Complaint for Paternity.

The judgment is reversed and this cause is remanded to the trial court with instructions to reinstate S.V.'s Complaint for Paternity.

BUCHANAN and GARRARD, JJ., concur.