Jerry B. CAPES, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 27A02–9206–CR–286.

Court of Appeals of Indiana, Second District.

June 14, 1993.

Joe Keith Lewis, Marion, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Jerry Capes appeals his conviction of Arson, a Class B felony.[1] Upon appeal, Capes presents three issues for our review, which we consolidate and restate.

I.  Whether the trial court erred by admitting evidence of an insurance settlement and of a repair estimate with respect to the amount of damage to the property; and

II. whether the trial court erred in denying defendant credit for time served in pretrial home detention?

We affirm.

Capes does not dispute that he precipitated and participated in the intentional burning of a residence next door. He questions only the evidence as to the extent of damage caused to the structure. For this reason we need not recite the facts of the occurrence.

## I. ADMISSION OF EVIDENCE

In order to convict a person of class B arson, the State must prove that the fire caused at least $5,000.00 in damages. Capes contends that two items of evidence offered by the State to prove the amount of damage caused by the fire were erroneously admitted.

Brett Caine, the owner of the burned house, was asked upon direct examination whether he had received money from his insurance company as a result of the fire. Defense counsel objected upon the ground that the amount of the insurance settlement was irrelevant upon the question of Caine's pecuniary loss. The objection was overruled and Caine testified that for property damage he was paid $5,500.00 by his insurance company.[2]

■ Evidence is relevant, and thus admissible, if it tends to prove or disprove a material element of the crime. *Davidson v. State* (1990) Ind., 558 N.E.2d 1077. Any evidence having even a slight tendency to prove a material fact is sufficiently relevant to be admissible. *Smith v. State* (1988) Ind., 528 N.E.2d 81.

■ In the instant case, the amount of damage caused by the fire was a material element of the offense; i.e., damage in excess of $5,000.00 would cause the arson to be class B rather than class C felony. An insurance settlement for damaged or destroyed property reflects the opinion of the insurer as to the amount of monetary damage suffered by its insured. Such estimates are made by persons who possess some sophistication in assessing the market value of property. Thus, the settlement in the instant case reflects the opinion of one whose business it is to assess damage resulting from, in this case, fire. As such, the amount of the settlement was not irrelevant upon the question of the property damage suffered by Caine as a result of the fire, and the trial court's ruling was not an abuse of discretion.

■ Capes contends that the trial court erred in allowing into evidence a repair estimate. Richard Gouchenour was engaged in the business of, among other things, doing professional fire and smoke restorations. Gouchenour testified upon direct examination that the repair estimate for the damage resulting from the fire was $13,633.72. Defense counsel again objected to the evidence as irrelevant.

Capes acknowledges that repair estimates have been deemed admissible upon the issue of pecuniary loss. *See Mitchell v. State* (1990) 4th Dist.Ind.App., 559 N.E.2d 313, *trans. denied.* Nevertheless, he contends that the rule in *Mitchell* should not apply here because "[t]he repair estimate ... astonishingly exceeds the purchase price of the property ($3,000.00)...." Brief of Appellant at 19. Capes provides

---

1.  I.C. 35–43–1–1(a)(3) (Burns Code Ed.1985).

2.  The total insurance payment was $5,900.00 which included $400.00 for loss of use for two months.

no authority, nor do we find any, for the proposition that, to be admissible upon the issue of pecuniary loss, a repair estimate must approximate the purchase cost of the property. As with the insurance settlement, the repair estimate in the instant case was made by a professional with experience in such matters. The fact that the repair estimate amount was almost two times the amount spent upon the property, including repair and improvements, goes to the weight of the evidence, not the admissibility. Indeed, Capes's attorney placed this discrepancy squarely before the jury: "And this property that you have now, which you spent $7,500.00 on is in substantially better condition than the property was originally, is that correct?" Record at 396. Mindful that the threshold of relevance upon appellate review is low, we conclude that admission of the estimated cost of repairs was not clear error. Moreover, it was the jury's responsibility to assign weight to the various means of measuring the fire's damage, including the repair estimate, which were offered by the State. We will not invade the jury's province in this regard. *Smedley v. State* (1990) Ind., 561 N.E.2d 776.

## II. CREDIT FOR TIME SERVED

On January 16, 1991, the trial court entered the following pre-trial order:

"This matter is before the Court on Defendant's oral Motion for Reduction of Bond.

Defendant appeared in person and with counsel, John B. Milford and State of Indiana was represented by Deputy Prosecuting Attorney James Luttrull at hearing on January 16, 1991.

Evidence was heard and concluded and the Court now orders that Defendant be released on his own recognizance under the condition that he be placed in Home Detention with electronic monitoring with the requirement that he remain at home at all times with the sole exception being the hours of 6:00 A.M. to 6:00 P.M. when he may be traveling to work, at work in Kokomo, Indiana or returning to home from work. During those working hours Defendant is to be on the construction project for the Kokomo Housing Authority on Hoffer Street in Kokomo, Indiana. Any violation of these conditions will result in Defendant's immediate reincarceration." Record at 15.

On December 20, 1991, the trial court revoked Capes's home detention for violation of conditions. At the time of revocation, Capes's home detention had lasted 309 days. While awaiting trial and sentencing, Capes was incarcerated for 101 days. The trial court ultimately sentenced Capes to ten years in prison, with four years suspended, followed by four years on probation. The court ruled that Capes was entitled to 101 days credit for time served.[3] Capes contends that the trial court erred in failing to credit him for the 309 days which he spent under home detention.

Pursuant to I.C. 35–50–6–4 (Burns Code Ed.1985), a person awaiting trial for a crime is initially assigned to class I for the purpose of determining credit time. Indiana Code 35–50–6–3 (Burns Code Ed. 1985) states: "A person assigned to class I earns one [1] day of credit time for each day he is imprisoned for a crime or confined awaiting trial or sentencing." Capes contends that while under home detention he was "confined" within the meaning of I.C. 35–50–6–3, thus requiring that he be credited for time spent on pretrial home detention. His contention succinctly frames the issue: does in-home detention constitute "confinement" within the meaning of I.C. 35–50–6–3? This is a question of first impression in Indiana.[4]

---

3. The record reflects that the actual number of days of jail incarceration prior to sentencing did not exceed 72 days.

4. The meaning of "confinement" as used in I.C. 35–50–6–3 has been discussed previously, albeit in a different context. In *Dewees v. State* (1983) 1st Dist.Ind.App., 444 N.E.2d 332, the court considered the meaning of "confinement" as it applied in cases in which the defendant faced more than one charge. In *Dewees,* the defendant was arrested and confined to jail upon a theft charge on August 12, 1981. On September 1, 1981, the defendant posted bond and was released. He remained free until two days later, when he was rearrested upon unrelated charges. Although his bond for the first charge

We first note that the granting of credit time is a matter of legislative grace. *Cf. Cottingham v. State* (1981) Ind., 424 N.E.2d 105, 107 ("good time credit for satisfactory behavior is a state-created right and ... any concept of 'liberty' attaches to such credits only when the state, in fact, *grants* them" [emphasis in original]); *Dunn v. Jenkins* (1978) 268 Ind. 478, 377 N.E.2d 868, 876 ("An inmate has no constitutional right to receive good time credit.... [t]he legislature is given wide latitude in designing and implementing a good time scheme.") Accordingly, such rights as Capes has in this regard are to be defined by the legislature. Those rights are contained in I.C. 35–50–6–3.

When construing a statute, this court has a duty to determine and effect the legislature's intent. *Matter of Lawrance* (1991) Ind., 579 N.E.2d 32. To that end, we first examine the historical setting in which this statute was enacted.

At the time of the enactment of the "good time" statute, the legislature had not yet created home detention as a means of restricting the liberty of persons convicted of crimes. Home detention was not legislatively created or recognized until 1988, with the enactment of I.C. 35–38–2.5–1, *et seq.* (Burns Code Ed.Supp.1992).[5] Thus, at the time of enactment of I.C. 35–50–6–3, two options were available to a trial court upon sentencing: either to confine the guilty party to a correctional facility or jail, or to place him or her upon probation.[6] The legislature's intention re-

was never revoked, he remained in jail until December 30, 1991, when he pleaded guilty to the earlier charge, in exchange for which the State dropped the later charge. The trial court credited the defendant with twenty-one days presentence jail time, representing the time from his first arrest to his release on bond.

The defendant argued that he was entitled to credit for the time he spent in jail between September 3 and December 30. The court acknowledged that "one possible interpretation of ['confined awaiting trial or sentencing'] would allow a defendant convicted and sentenced for one offense credit toward that one sentence for time spent 'awaiting trial or sentencing' for *any* offense." [Emphasis in original] 444 N.E.2d at 334 (quoting *Dolan v. State* (1981) 3d Dist.Ind. App., 420 N.E.2d 1364, 1373). However the court concluded that "[s]uch an interpretation and application of this legislation would be unreasonable and clearly violate the intent of the Legislature." *Id.*

Although it concerns the same statutory language, the instant case does not present the question addressed by the *Dewees* court. However, we note that the *Dewees* court equated "confined" with "in jail":

"Where a defendant *is in jail* on one charge and a second charge is filed, credit on the second charge begins to accrue at the date of the arrest and not the date of filing.... The end result is that a defendant, *because of time spent in jail awaiting trial,* will not serve more time than the statutory penalty for the offense, and will not serve more time than a defendant who has the good fortune to have bail money." [Emphasis supplied] 444 N.E.2d at 334.

5. It should be noted that this statute pertains only to home detention ordered in conjunction with probation; it does not make provision for

preconviction or presentencing home detention. I.C. 35–38–2.5–5(a). Nevertheless, trial courts in Indiana have utilized home detention in the pretrial or presentencing setting. The trial court's comments during the hearing for revocation of home detention indicate that Capes's home detention was part of such an experimental program:

"[Home detention] is a relatively new experiment here in Grant County—we've been attempting to find our way in this concept for the last year or two and I think we all agree that Home Detention is a privilege afforded certain defendants who meet certain criteria that makes them a safe risk for release from jail pending trial when they can't meet bond, typically they have employment and a family to support and are not a risk to commit other criminal acts, to bother witnesses or victims or to show up at all court hearings." Record at 230–31.

Nevertheless, although Capes's home detention was not served in the setting addressed by I.C. 35–38–2.5–1 *et seq.,* for purposes of the instant discussion, pretrial and presentence home detention are sufficiently similar to home detention ordered as part of sentencing as to be treated equivalently.

6. One approach to this inquiry, admittedly a simplistic one, would be to base the instant determination upon our conclusion regarding which of the two—probation or incarceration in prison or jail—home detention more closely resembles. Although this is a valid inquiry, we deem it preferable to examine the question in greater depth. However, we note that home detention has heretofore been viewed as a condition of probation. *See Menifee v. State* (1992) 2d Dist.Ind.App., 601 N.E.2d 359, 360 n. 1 ("In addition to placing Menifee on in-home detention, the order also placed him on 'probation for

garding credit time *vis a vis* those two options, incarceration and probation, was manifestly clear. Pursuant to I.C. 35–50–6–3, a person earns credit time for time spent imprisoned for a crime or confined awaiting trial. On the other hand, a person does *not* earn credit time while on parole or probation. I.C. 35–50–6–6(a) (Burns Code Ed.1985). Consistent with the statutory options then available, "confined awaiting trial", at the time the legislation was promulgated, can only have meant confined in a penal institution or jail.[7]

■ This conclusion in turn presents the question whether the legislature, if home detention had been in use at the time, would have equated it with confinement in a penal institution or jail. When the circumstance to which we apply a statute was not within a fair legislative contemplation at the time of enactment, we may not by hindsight declare such legislative intent. We may, however, and must here, be guided by the reasons and policy underlying the statute's enactment, as well as the goals that the legislature sought to achieve. *Indiana State Police Department v. Turner* (1991) 1st Dist.Ind.App., 577 N.E.2d 598, *trans. denied.*

■ Our Supreme Court has stated that the purpose of the good time statute is to "encourage inmates of penal institutions to behave well while confined, improve their morale and thus help the prison authorities to maintain order and control." *Dunn, supra,* 377 N.E.2d at 873. While serving home detention, a person is neither an inmate of a penal institution, nor a threat to

order and control in any prison. Thus, the purpose of the statute in question would not be furthered, or even affected, by the interpretation urged by the defendant. In short, ascribing to I.C. 35–50–6–3 the meaning urged by Capes would work a revision upon the statute not within the presumable goals or purposes of the legislature at the time of enactment. Such invitation to rewrite legislation is properly directed to the legislature. *S.V. v. Estate of Bellamy* (1991) 2d Dist.Ind.App., 579 N.E.2d 144, 145. We therefore conclude that "confinement" as used in the statute means confined in jail.

Finally, we note here that our holding is not inconsistent with prior cases discussing this statute. In *Brown v. State* (1975) 262 Ind. 629, 322 N.E.2d 708, the defendant challenged the trial court's denial at sentencing of credit for time spent in jail while awaiting trial. Defendant's contention was based upon I.C. 35–8–2.5–1, since repealed, which is the predecessor statute to the current good time provision. The Court noted that the statute required that a sentencing court "allow credit for all presentence confinement attributable to the same criminal offense." *Id.* 322 N.E.2d at 711. Although the Court did not explicitly state the meaning of "confinement" in that context, it is worthy of note that the defendant's confinement in *Brown* consisted of jail time. Moreover, the Court supported its decision with reasoning consistent only with the view that "confinement" means jail or prison time:

"It is also highly probable that the General Assembly considered the matter

---

the balance of the time of his sentence under the ordinary and usual conditions of probation.") This lends support for our conclusion, *infra*, that time spent while on pretrial home detention is not to be credited toward the sentence ultimately received upon conviction.

7. In 1976 the legislature created the "good time" classification system mandating that "[a] person assigned to Class I earns one (1) day of good time for each day of imprisonment." Acts 1976, P.L. No. 148, § 8. This provision apparently pertained only to post-conviction, post-sentencing jail time, and made no allowance for time spent in jail before trial, or after trial and before sentencing. The legislature addressed the issue of presentencing time in jail in Acts 1977, P.L.

No. 340, § 134, where it amended the aforementioned statute to read "[a] person assigned to Class I earns one (1) day of credit time for each day he is imprisoned for a crime or confined awaiting trial or sentencing." Capes would have us interpret this amendment to mean that the legislature intended to award good time for non-jail confinement. We disagree as to the meaning and significance of the amendment. In the context of the modes of serving a criminal sentence then available, i.e., in jail or out of jail on probation, the amendment addressed the time of confinement, not the manner. That is, the legislature sought to confer credit time upon a wider range of persons based upon when they served time in jail, not upon the manner in which they were confined.

from the standpoint of those who have been convicted and have commenced service of their sentences in prison. In the absence of credit being given for presentence confinement, irrational differences in total time confined would exist between inmates serving identical sentences for identical offenses...." *Id.* at 711–12.

Obviously, spending time in a home detention program is not "identical" to serving time in jail or prison.

In *Cottingham v. State, supra,* 424 N.E.2d 105, again, though not called upon to address the precise meaning of "confinement", our Supreme Court in treating the credit-time statutes used language to evince the view that "confinement" means confinement in jail.

In summary, our research reveals that every court which has addressed the current credit time statute, or its predecessors, has applied the statute only when the defendant spent time in jail, and not in conjunction with any other means of restricted liberty, such as home detention.

We hold that I.C. 35–50–6–3 applies only when a person has been confined in a prison, county jail, or any facility which imposes substantially similar restrictions upon personal liberty. Our holding is consistent with two recent cases which also concluded that a court need not grant credit time for time spent under home detention, although those cases were decided upon different bases. *See Smith v. State* (1993) 5th Dist. Ind.App., 610 N.E.2d 265, 269–70; *Barton v. State* (1992) 3d Dist.Ind.App., 598 N.E.2d 623.

The trial court did not err in denying to Capes credit for the time spent under home detention.

Affirmed.

SHIELDS and CONOVER, JJ., concur.