**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 10 2014, 9:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BERNICE A.N. CORLEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAY SLEET, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1311-CR-997 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
The Honorable Steve Rubick, Magistrate
Cause No. 49G01-1208-FC-57166

**September 10, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

Appellant/Defendant, Jay Sleet ("Sleet"), appeals his conviction for Class C felony battery[1] and the trial court's refusal to award him credit for time served on pre-trial home detention. He argues that the evidence supporting his conviction is insufficient because it was based on the testimony of one witness, whom he claims was not credible. He also contends that the trial court abused its discretion by refusing to award him credit for his time served on pre-trial home detention because the trial court thought he had violated the terms of his home detention, and he claims that he had not. We affirm the trial court's judgment because there was sufficient evidence to support Sleet's conviction. We also affirm the trial court's sentence because it was within the trial court's discretion to refuse to award Sleet credit for his time served on pre-trial home detention.

We affirm.

ISSUES

1. Whether there was sufficient evidence to support Sleet's conviction for Class C felony battery.

2. Whether the trial court abused its discretion when it refused to award Sleet credit for time he served on pre-trial home detention.

FACTS

Sleet started dating Colette Lanter ("Lanter") in October or November of 2011, and they were still dating in August of 2012. On August 17, 2012, Lanter got off of work from her job in downtown Indianapolis around 10 or 11 p.m. Sleet met her at her work,

---

[1] IND. CODE § 35-42-2-1(a)(3) (2012).

2

and they walked to a bar downtown. At the time, Lanter could tell that Sleet was intoxicated and "louder than usual." (Tr. 48).

When they arrived at the bar, Lanter ordered a couple of drinks for them and then received a text from her roommate, Lavon Tomlin ("Tomlin"). Tomlin's car was out of gas, and he asked Lanter if he could borrow a few dollars. Lanter responded that she was about to go to the Pub, another bar downtown, and that Tomlin could meet her there and pick up some money. Sleet asked Lanter who she was texting and then, when Lanter told him, Sleet got upset and spilled Lanter's drink in her lap. In response, Lanter told Sleet that she would see him later and left to go to the Pub. Sleet followed her there.

When Lanter and Sleet arrived at the Pub, Chris Brown ("Brown"), a bartender at the Pub and former co-worker of Lanter's, noticed that they "were bickering—kind of arguing as they came in." (Tr. 67). However, it was around midnight, which was when Brown's shift ended, so he did not serve them any drinks. Dustin Joe Donovan ("Donovan"), another bartender at the Pub, served Lanter and Sleet drinks and noticed that they were not interacting much and "seemed to not be [] getting along great at the time . . . ." (Tr. 60). They were arguing because Sleet "kept repeatin[g himself]," and Lanter "was getting[g] irritated." (Tr. 51). As a result, Lanter went outside to talk to some of her friends. Sleet followed her and continued arguing, so Lanter went back inside and started to take shots with a friend.

Later, Lanter again went outside to talk to some friends. However, she did not remember anything after that point until she woke up in a hospital. Brown was also outside with Tomlin and a few of Lanter's other friends. Brown was talking to Tomlin

3

when he heard Lanter and Sleet arguing. Then, he heard "what was either a smack or a hit" that sounded like "skin hitting skin." (Tr. 69). He looked up and saw that Sleet had Lanter "by the back of the neck and slammed her into the ground a couple of times." (Tr. 69). All of the friends reacted, and several of the friends went to help Lanter, although no one else remembered seeing how Lanter got injured. Tomlin restrained Sleet while Brown ran inside, told Donovan to call 9-1-1, and grabbed towels for Lanter, who was bleeding profusely. Lanter had a gash on her head, and there was a "massive puddle" of blood under her. (Tr. 71).

Police officer Christopher Faulds ("Officer Faulds") with the Indianapolis Metropolitan Police Department responded to the scene and observed that Lanter "had some blood on her clothes and some cuts to her face." (Tr. 38). He tried to get a response from her, but she was "not very lucid." (Tr. 38). Sleet was also unresponsive and unwilling to speak. However, the limited number of words he spoke to Officer Faulds were slurred. He was also unsteady on his feet, had a strong odor of an alcoholic beverage on him, and had bloodshot eyes. As a result, Officer Faulds arrested him for public intoxication. He later also arrested Sleet for disorderly conduct and battery.

Subsequently, on August 22, 2012, the State charged Sleet with Class C felony battery. On August 31, 2012, the trial court released Sleet to pre-trial home detention. Sleet waived his right to a jury trial, and the trial court held a bench trial on October 2, 2013. At the trial, Brown testified that he had seen Sleet slam Lanter's head into the ground a couple of times. He also testified that he did not drink any alcohol between midnight, when he officially ended his shift, and approximately 2:30 a.m., when Lanter's

4

injuries occurred. At the conclusion of the trial, the trial court found Sleet guilty as charged.

On October 22, 2013, the trial court held a sentencing hearing and sentenced Sleet to four (4) years, with two (2) years executed at the Department of Correction. The trial court also credited Sleet with forty-one days served prior to sentencing. However, the trial court refused to credit Sleet for time he served on home detention before trial. Its reasoning was that Sleet had violated his home detention. Sleet asserted that he had not violated his home detention but had actually had a mechanical issue with the box that Community Corrections gave him. Sleet claimed that he had brought the problem to Community Corrections' attention and had sorted it out. In response, the trial court said it would e-mail Community Corrections and consider awarding Sleet credit for his pre-trial home detention time if Community Corrections confirmed his story. Sleet now appeals. We will provide additional information as necessary.

## DECISION

On appeal, Sleet argues that there was insufficient evidence to support his conviction for battery and also that the trial court should have credited him with time he served on pre-trial home detention. We will address each of these issues in turn.

1. Sufficiency of the Evidence

The standard of review for sufficiency of the evidence claims is that this Court should reverse a conviction only when reasonable persons would not be able to form inferences as to each material element of the offense. *Perez v. State*, 872 N.E.2d 208, 212-13 (Ind. Ct. App. 2007), *trans. denied.* We do not reweigh evidence or judge the

5

credibility of witnesses. *Id.* at 213. In addition, we only consider the evidence most favorable to the verdict and the reasonable inferences stemming from that evidence. *Id.*

In order to convict Sleet of battery, the State was required to prove beyond a reasonable doubt that he "knowingly or intentionally touch[ed] another person in a rude, insolent or angry manner" that "result[ed] in serious bodily injury." I.C. § 35-42-2-1(a)(3) (2012). A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. I.C. § 35-41-2-2.

Sleet's claims there was insufficient evidence to support his conviction because Brown's testimony that Sleet grabbed Lanter "by the back of the neck and slammed her into the ground a couple of times" was not credible. (Tr. 69). Specifically, he argues that it was "highly improbable" that Brown hung out at the bar for three hours after his shift ended without drinking. (Sleet's Br. 12). He also claims that Brown's testimony is not credible because he did not tell Officer Faulds what he had witnessed on the night in question.

We are not persuaded by Sleet's arguments because both are invitations to judge the credibility of a witness, which we will not do. *See Perez*, 872 N.E.2d at 213. Moreover, Sleet does not cite to anywhere in the transcript where Officer Faulds stated that Brown did not tell him what he had witnessed. To the contrary, Officer Faulds testified that he "spoke to several of the witnesses that were also gathered in the parking lot and [] was able to get an idea of what had occurred." (Tr. 39). Therefore, since Brown's testimony provided evidence to prove that Sleet committed battery and he does

not otherwise dispute the sufficiency of the evidence, we conclude that there was sufficient evidence to support his conviction.

2. Credit Time

Next, Sleet contends that he served 390 days on pre-trial home detention and that the trial court abused its discretion when it refused to award him credit for serving this time. He claims that the trial court intended to grant him credit if Community Corrections confirmed that he had not violated the terms of his home detention. In addition, he argues that his counsel's argument that the alleged violation was merely an equipment malfunction was evidence in and of itself that there was not a violation. Sleet requests us to remand this issue to the trial court to determine whether there was a violation and award him credit time if there was not.

It is well-established that because pre-sentence jail time credit is a matter of statutory right, trial courts generally do not have discretion in awarding or denying such credit. *Molden v. State*, 750 N.E.2d 448, 449 (Ind. Ct. App. 2001). However, because credit for pre-trial home detention is not a statutory right, an award of credit for time served on pre-trial home detention is within the discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion. *Id.* The reasoning behind this rule is that "time spent in home detention is not identical to time spent in jail or prison." *Id.* at 451 (discussing *Capes v. State*, 615 N.E.2d 450 (Ind. Ct. App. 1993)). Instead, "only when a person has been confined in a prison, county jail, or any facility which imposes substantially similar restrictions upon personal liberty is a person entitled to credit against his sentence for time served prior to trial." *Id.* We will find that a trial

7

court has abused its discretion only when its decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Anglemyer v.* State, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218.

Here, there is evidence in the record that Sleet did violate the conditions of his home detention. The Chronological Case Summary indicates that he violated his detention on July 18, 2013. Sleet relies entirely on his counsel's self-serving claims that he did not violate his detention as proof of his compliance.

Regardless of whether a violation occurred, though, the trial court did not, as Sleet contends, agree to award him credit time if Community Corrections confirmed his story. Instead, the trial court told Sleet that it would "consider" awarding him time. (Tr. 108). Based on the trial court's silence in the record after the sentencing hearing, we must conclude that the trial court decided not to award Sleet time. This decision was within its discretion, and Sleet has not provided us with any evidence to support his argument that the trial court abused its discretion. As stated above, a person is entitled to credit only when he or she has been confined to "a prison, county jail, or any facility which imposes substantially similar restrictions upon personal liberty." *Molden*, 750 N.E.2d at 451. Sleet has not provided any evidence that the terms of his home detention imposed restrictions upon his personal liberty substantially similar to a prison. Accordingly, we conclude that the trial court's decision not to award him credit for his time served on home detention was not against the logic and effect of the facts and circumstances before it and, thus, was not an abuse of discretion.

8

Affirmed.

NAJAM, J., and BAILEY, J., concur.